**RETAIL CLERKS UNION, LOCAL 770 et al., Plaintiffs,**

v.

**RETAIL CLERKS INTERNATIONAL ASSOCIATION et al., Defendants.**
Civ. No. 72-2143.

United States District Court,
C. D. California.
April 13, 1973.

Wyman, Bautzer, Rothman & Kuchel, Terry Christensen, Beverly Hills, Cal., for plaintiffs.

Kadison, Pfaelzer, Woodard, Quinn & Rossi, Richard T. Williams, Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER DISMISSING ACTION

WHELAN, District Judge.

In this action, defendants have moved to dismiss the action on the ground that plaintiffs have failed to state a claim upon which relief can be granted. The action was submitted to the Court for decision after argument, both oral and written, by counsel for the respective parties. It is the opinion of this Court that this is a proper case for dismissal of the action for it can be determined affirmatively from the pleadings and affidavits filed herein that plaintiffs cannot secure any relief in this action.

Plaintiffs have charged that the defendant Retail Clerks International Association (hereinafter referred to as RCIA) by adopting at their recent convention bylaws to the RCIA constitution providing for the mandatory retirement at age 65 of officers and employees of the International Union and its chartered locals has discriminated against plaintiffs on the basis of age.

The applicable bylaws read:

" . . . [N]o person may hold an elected office in The International Association or any of its chartered bodies beyond the first day of the month next following January 1974 or his 65th birthday, whichever occurs later."

" . . . [T]he International Association and its chartered bodies shall not commence or continue the employment of any person beyond the first day of the month next following January 1974 or his 65th birthday, whichever occurs later."

By operation of these bylaws, plaintiffs DeSilva, who is and has been the chief executive officer of plaintiff Retail Clerks Union, Local 770, for thirty-five years, and Tiano, who has been employed by the same local as a business agent for more than twenty-five years, will cease to be eligible for union employment on February 1, 1974. Plaintiff DeSilva, in fact, will be 69 years of age in May, 1973.

Plaintiffs have alleged that RCIA's retirement bylaws violate the Fifth and Fourteenth Amendments to the United States Constitution. However, this Court is of the opinion that plaintiffs have failed to allege the requisite "state action" as required by the recent case of Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) wherein the Supreme Court stated:

"The Court has never held, of course, that discrimination by an otherwise private entity would be violative of the Equal Protection Clause if the private entity receives any sort of benefit or service at all from the State, or if it is subject to state regulation in any degree whatever." *Id.* at p. 173, 92 S.Ct. at p. 1971.

In the instant case, there is no allegation that the state or federal government either originated the idea of the mandatory retirement bylaw, or is in any way active in the perpetration of the bylaw by the union. Likewise, there is no allegation of the significant involvement of the state which this Court considers to be required by *Moose Lodge.* The power of the state is not used in such a manner as to enforce or encour-

age private discrimination. Therefore, there is not the kind of state action necessary to state a claim pursuant to the Fifth and Fourteenth Amendments.

Plaintiffs additionally allege a violation of 42 U.S.C. § 1985(3) and § 1986, asserting that these sections are applicable to private action as well as state action. The case of Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) holds that under these sections of the Civil Rights Act of 1866 (Ku Klux Klan Act) Negroes are entitled to sue for damages because of purely private conspiracies aimed at depriving Negro citizens of their right to travel freely without interference upon the public highways. The Court in *Griffin* held Section 1985(3) to be constitutional under the Thirteenth Amendment and under the Congressional power to protect the right to interstate travel, even though there was no state action. The Court in *Griffin* did not, however, reach the question of whether Congress could punish purely private conspiracies which were not racially motivated, and which did not involve the right to travel upon the public highways.

"The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. at p. 102, 91 S.Ct. at p. 1798.

Likewise, the Court stated:

"That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." *Id.* p. 101, 91 S.Ct. p. 1798.

■ This Court holds that it was not the intent of Congress to punish under these statutes purely private conspiracies of the nature alleged in the complaint. Thus, it would be erroneous to apply § 1985(3) or § 1986 to defendants in the absence of a showing of state involvement in the alleged discrimination.

■ However, this Court holds that even if § 1985(3) or § 1986 did not require state action in the circumstances of this case, plaintiffs still have not asserted a claim upon which relief could be granted. Not all discrimination between classes of persons is violative of the law. The test is whether distinctions which are drawn are rationally related to the purpose for drawing of the distinctions. Here, this Court cannot say that the mandatory retirement provisions do not achieve a permissible end, or that the means chosen are impermissible or irrational.

The purpose behind the retirement bylaws as stated by RCIA is the following:

"*Retirement of Officers and Employees*

"(A) It is the purpose of this section to establish uniform requirements for the retirement of all officers and employees of the International Association and its chartered bodies, at the same time allowing a transition period considered essential to avoid both organizational dislocation and individual hardship."

■ This Court finds the means chosen to be rationally related to achieving a permissible objective.

Age classifications of persons of advanced years have not been held to be constitutionally or statutorily infirm. In Weiss v. Walsh, 324 F.Supp. 75 (S.D. N.Y.1971), affirmed 461 F.2d 846 (2d Cir. 1971), cert. den. 409 U.S. 1129, 93 S.Ct. 939, 35 L.Ed.2d 262 (1973), a state-endowed professorship was first offered, and then withdrawn from plaintiff Weiss, allegedly because of his age (seventy). The Court dismissed the ac-

tion, holding that Professor Weiss was not the victim of an invidious and impermissible discrimination, and holding that age ceilings upon eligibility for employment are not inherently suspect, "although their application will inevitably fall unjustly in the individual case". *Id.*, 324 F.Supp. at p. 77. Likewise, in Norman v. United States, 183 Ct.Cl. 41, 392 F.2d 255 (1968), the Court held that mandatory retirement of senior grade military officers was not a deprivation of a vested right without due process of law. Similarly, in McIlvaine v. Pennsylvania State Police, 6 Pa.Cmwlth. 505, 296 A.2d 630 (1972), the Court held that a legislative enactment establishing a mandatory retirement age (there age sixty) for police officers, uniformly applied, was not unreasonable and was not a constitutional or statutory violation.

It appears from the affidavit of William W. Maguire, Secretary-Treasurer of the Retail Clerks International Association, filed by defendants, that the challenged retirement bylaws will require 3 of the 23 International Association's elected officers to retire at the expiration of their current terms; that it will mandate the retirement within three years from January 2, 1974, of 5 of the employees of the International Association, and that 2 other of the International Union employees would be forced to retire were it not for the fact that they have already voluntarily retired. It further appears that 31 of the Chief Executive Officers of the 211 local unions will be required to retire within three years after the effective date and that an additional 4 Chief Executive Officers would likewise be required to retire were it not for the fact that they have as of this date already retired. It further appears that 185 of the other 1425 officers of the local unions will be required to retire within three years after the effective date of the bylaws, and that an additional 4 officers would be required to retire were it not for the fact that as of this date they have already voluntarily retired. The affidavit of plaintiff DeSilva does not controvert these facts.

Thus, there is no proof that these provisions were enacted with the specific intent of depriving these particular two plaintiffs of their livelihood. It likewise appears that these provisions will be uniformly and non-discriminatorily applied to all those union personnel to whom they are applicable.

Thus, this Court finds that even if plaintiffs were not required to allege sufficient state action in the conspiracy, plaintiffs still have not stated a claim upon which relief could be granted since the mandatory retirement bylaws adopted by the international union are a permissible means of accomplishing a rational objective.

The fifth claim of plaintiffs is a state claim. Because the other four claims, alleged to be federal in nature, should be dismissed for the reasons stated, the pendent claim should also be dismissed, but without prejudice.