Martha Ellen **REICHARDT**, Individually and on behalf of all other women similarly situated, Plaintiff,

v.

Gleeson L. **PAYNE**, Individually and as Insurance Commissioner of the State of California, et al., Defendants.

No. C–74–1179 WHO.

United States District Court, N. D. California.

April 30, 1975.

Law Offices of John Wynne Herron, John Wynne Herron, Geoffrey B. Stearns, San Francisco, Cal., for plaintiffs.

Evelle J. Younger, Atty. Gen., of Cal., Mervin R. Samuel, Robert L. Bergman, Deputy Attys. Gen., San Francisco, Cal., for Ins. Commissioner of Cal.

McCutchen, Doyle, Brown & Enersen, Arthur R. Albrecht, Michael J. Plishner, San Francisco, Cal., for Life Ins. Co. of North America.

Pettit, Evers & Martin, Guy O. Kornblum, Charles S. Loughran, Phyllis E. Andelin, San Francisco, Cal., for Conn. Gen. Life Ins. Co., The Hartford Ins. Group, John Hancock Mut. Life Ins. Co., Washington Nat. Life Ins. Co.

Harlan M. Richter, Pillsbury, Madison & Sutro, San Francisco, Cal., for The Equitable Life Assurance Society of the U. S. of America.

Richard J. Kilmartin, Knight, Boland & Riordan, San Francisco, Cal., for Metropolitan Life Ins. Co.

Girvan Peck, Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., for New York Life Ins. Co.

## OPINION AND ORDER

ORRICK, District Judge.

Plaintiff, Martha Ellen Reichardt, brings this action on behalf of herself and a class of women who allege they have been discriminated against in purchasing disability insurance policies. She has named as defendants the Insurance Commissioner of the State of California ("the Commissioner"); the Life Insurance Company of North America ("LINA"), which is the company that sold plaintiff her disability policy; seven other named insurance companies; and a class of defendant insurance companies. Plaintiff claims that the disability insurance policies sold by defendant companies, and approved by the Commissioner, discriminate against women in that (1) women cannot obtain coverage for as long a period of disability as can men; (2) women must wait a longer period of time than men for benefit payments to commence once a disability has occurred; and (3) women are subject to a lower ceiling on monthly benefits than similarly situated men. Plaintiff alleges that these differences in coverage are based solely on sex and are not justified by actuarial differences

in the insurability of men and women. cf. *Stern v. Massachusetts Indemnity and Life Insurance Co.*, 365 F.Supp. 433 (E.D.Pa.1973).

Plaintiff has alleged four causes of action invoking the jurisdiction of the Court by alleging deprivation of her civil rights and those of the class she represents under 42 U.S.C. § 1983 [1] and a conspiracy to deprive her and the class she represents of their civil rights under 42 U.S.C. § 1985.[2] The first two causes of action are directed solely against the Commissioner. In the first cause of action plaintiff claims the Commissioner, by approving the insurance policies as he is bound to do before the policy can be issued under the California Insurance Code, has deprived plaintiff and her class of their civil rights in violation of 42 U.S.C. § 1983. In the second cause of action plaintiff raises a pendent state claim that the Commissioner has also violated her state constitutional rights by approving the allegedly discriminatory policies.

The third cause of action is directed against the eight named insurance companies and the defendant class they represent. Plaintiff claims these insurance companies have deprived her of her civil rights in violation of 42 U.S.C. § 1983 by offering discriminatory insurance coverage. She further claims that these insurance companies have conspired to violate her civil rights in violation of 42 U.S.C. § 1985(3).

The fourth cause of action is directed solely against LINA and claims that LINA intentionally inflicted emotional distress on the plaintiff by selling her a discriminatory policy.

All of the defendants have moved to dismiss all of the causes of action. Several of the defendants have also moved in the alternative for summary judgment on the 42 U.S.C. § 1985(3) claim. Having considered matters outside of the pleadings, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, the Court has treated all of the motions pertaining to the Section 1985(3) conspiracy allegations of the complaint as motions for summary judgment.

After hearing and considering the oral arguments, the memoranda of points and authorities, the affidavits and pleadings and all other papers on file in this action, for the reasons hereinafter set forth I deny the motions to dismiss the first and second causes of action and the motion for summary judgment on the Section 1985(3) conspiracy claim raised by the third cause of action and grant the motions to dismiss the fourth cause of action and the Section 1983 claim raised in the third cause of action.

---

1. 42 U.S.C. § 1983:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constituion and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. 42 U.S.C. § 1985 provides in pertinent part:

"(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

## I.

*First Cause of Action—42 U.S.C.
§ 1983 Claim Against the
Insurance Commissioner*

▮ To establish a violation of 42 U.S.C. § 1983, plaintiff must show that she was deprived of her constitutional rights by "state action". *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). The Commissioner contends that plaintiff's Section 1983 claim against him must be dismissed since any alleged discrimination in the sale of insurance policies is private discrimination that does not arise under the color of state law. The Commissioner further contends that he does not have the statutory authority to approve or disapprove premium rates charged by the insurance companies for disability policies and is, therefore, not involved in any of the alleged discrimination.

Section 10291.5 of the California Insurance Code deals with the Commissioner's power to disallow disability policies. The section provides in pertinent part, as follows:

"*Policies not to be approved: Rules and regulations: Withdrawal of approval: Review: Construction of section: When effective: Presumption: Application of section.* (a) The purpose of this section is to prevent, in respect to disability insurance, fraud, unfair trade practices, and insurance economically unsound to the insured.

(b) The commissioner shall not approve any disability policy for issuance or delivery in this state:

\*    \*    \*    \*    \*    \*

(13) If it fails to conform in any respect with any law of this state."

The purpose of the section is to prevent fraud, unfair trade practices, and insurance that is economically unsound to the insured.

The Commissioner relies on Section 10291.5(g) of the Insurance Code to support his theory of noninvolvement. Section 10291.5(g) [3] denies the Commissioner the power to "fix or regulate rates for disability insurance or prescribe a standard form of disability policy". The Commissioner argues that his sole function with respect to disability insurance policies is to determine if the policy is economically unsound. Before approving a policy, the Commissioner claims he does not determine, and does not have the power to determine, whether the policy confers the same economic benefit as other policies or whether it is issued to a man or a woman.

In my view, the Commissioner construes his powers too narrowly. The Commissioner has broad-reaching authority under the California Insurance Code. Section 10290 [4] provides that no disability policy can issue until the Commissioner has approved the rates and the form of the policy. Section 10291.5(b)(13) [5] provides that the Commissioner shall not approve a disability policy that fails to conform in any respect

---

3. California Insurance Code, Section 10291.-
5(g):
    "This section shall be liberally construed to effectuate the purpose and intentions herein stated; but shall not be construed to grant the commissioner power to fix or regulate rates for disability insurance or prescribe a standard form of disability policy."

4. California Insurance Code, Section 10290:
    "*Filing and approval of policy as prerequisite to issuance and delivery.* A disability policy shall not be issued or delivered to any person in this State until:

(a) A copy of the form thereof and, if more than one class of risks is written, of the classification of risks, and the premium rates pertaining thereto are filed with the commissioner.
    (b) Either:
    (1) Thirty days expires without notice from the commissioner after such copy is filed, or,
    (2) The commissioner gives his written approval prior to that time."

5. 42 U.S.C. § 10291.5(b)(13):
    "If it fails to conform in any respect with any law of this state."

with any law of the State of California. Section 10291.5(g) makes it clear that the code section is to be applied liberally and Section 10401 makes it a misdemeanor for any disability insurer to permit discrimination between insureds of the same class. This section provides that:

> "*Any incorporated insurer admitted for disability insurance* and any agent of such insurer, *that makes or permits discrimination between insureds of the same class in any manner whatsoever with relation to such insurance, is guilty of a misdemeanor.*" (Emphasis added.)

Although the Commissioner is prohibited from fixing or regulating rates for disability policies under Section 10291.-5(g), the Commissioner still has the power and the duty under Sections 10291.5(b)(13) and 10401 of the Insurance Code to disapprove altogether a discriminatory disability policy.

If the plaintiff is eventually able to establish that the policies sold by defendant companies do illegally discriminate against women, the Commissioner's approval of the policy will play an active and integral role in this discrimination. The Commissioner cannot close his eyes to the terms of the policies he is approving and then claim noninvolvement in any discriminatory results.

Nor does the Commissioner's reliance on the Supreme Court decisions in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) or *Moose Lodge No. 107 v. Irvis,* 407 U. S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), support his position that the approval of the policy does not constitute state action. Both *Jackson* and *Moose Lodge* dealt with the nexus of state involvement with a private utility company or private club when these private organizations were sued under Section 1983. These decisions were not concerned with the situation currently before the Court which is the involvement of a state official sued in his official capacity, acting under the color of state

law. I find that the Commissioner is adequately involved in the alleged discrimination to satisfy the state action requirements of 42 U.S.C. § 1983 and I deny the motion to dismiss the first cause of action.

### II.

### *Second Cause of Action—Violation of the California Constitution*

■ The second cause of action is solely against the Commissioner and claims that his approval of the discriminatory policies violates Article I, Sections 11 and 21, of the California Constitution. This claim is properly before the Court under the Court's pendent jurisdiction. Since the motion to dismiss the Section 1983 claim raised in the first cause of action is denied, the second cause of action is also properly before the Court. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, the motion to dismiss is denied.

### III.

### *Third Cause of Action—42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) Claims Against the Insurance Companies*

### A. *The 42 U.S.C. § 1983 Claim*

■ Plaintiff claims that the named insurance companies and the class of companies they represent have discriminated against her in violation of her civil rights under 42 U.S.C. § 1983. As with the Section 1983 action against the Commissioner, plaintiff must establish that the deprivation of her rights occurred under color of state law. Since the insurance companies are private entities, plaintiff must establish an adequate nexus between the state and the alleged discriminatory actions of the insurance companies to fulfill the requirement of state action. Under the authority of *Jackson v. Metropolitan Edison Co., supra,* I find that the sale of allegedly discriminatory disability policies by

the insurance companies does not arise under color of state law.

In *Jackson,* the Supreme Court held there was no jurisdiction to review the actions of the private utility company in cutting off plaintiff's electricity without notice or an opportunity to be heard since the utility company did not operate under the color of state law. Although the state utility commission had reviewed the company's regulations and approved them, the state's tacit approval of actions initiated by the company did not transmute the company's action into state action. The case at bench presents a similar situation. The Commissioner reviews the disability policies issued by the defendant companies; his approval is needed before the policy may issue. However, if similar tacit approval did not convert the actions of the heavily state-regulated utility company into state action in *Jackson,* the nexus between the insurance companies and the Commissioner in the case at bench is also inadequate to bring the actions of the private companies under the color of state law.

■ Even assuming adequate state involvement to support a Section 1983 claim against the named private insurance companies, plaintiff lacks standing to bring the Section 1983 claim against the named companies other than LINA, the company from which she purchased her policy. Plaintiff did not have any direct dealings with any of the other named companies. Although she consulted an independent sales agent before selecting her policy, defendants have established that this independent agent had no authority to represent any of the named defendant companies other than LINA, nor did he ever represent to plaintiff that he had such authority. Lacking direct or indirect dealings with the named companies other than LINA, plaintiff lacks standing to sue under 42 U.S.C. § 1983. *Weiner v. Bank of King of Prussia,* 358 F.Supp. 684 (E.D.Pa. 1973). The motion to dismiss the Section 1983 claim stated in the third cause

of action against the defendant companies is therefore granted.

**B. The 42 U.S.C. § 1985(3) Claim**

Plaintiff contends that all of the named insurance companies have conspired to set discriminatory disability rates and thereby deny her civil rights under 42 U.S.C. § 1985(3). Defendant companies have moved to dismiss this claim on the grounds that Section 1985(3) does not reach private conspiracies premised on a violation of the Fourteenth Amendment, does not reach sexually discriminatory conspiracies, and requires an independent showing of animus. Defendant companies further contend that even assuming an action under Section 1985(3) would be appropriate in the present factual situation, plaintiff has failed to satisfy the technical pleading requirements of Section 1985(3) since she has failed to allege or support specific overt acts of a conspiracy.

**1. 42 U.S.C. § 1985(3) Reaches All Private Conspiracies**

■ The Court must first determine the threshold question of whether Section 1985(3) reaches *all* private conspiracies or whether the statute requires some showing of state involvement. Justice Stewart's well-reasoned opinion in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) makes it clear that suits brought under 42 U.S.C. § 1985(3) do not require a showing of state action comparable to Section 1983. In *Griffin* the Section 1985(3) conspiracy claim was based on a violation of plaintiff's Thirteenth Amendment rights and federal rights to travel interstate. Neither of these constitutional sections have traditionally required an independent showing of state involvement. The Court nonetheless extended the reach of Section 1985(3) to cover private conspiracies in violation of an individual's civil rights provided there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' ac-

tion[s]". *Griffin v. Breckenridge, supra,* at 102, 91 S.Ct. at 1798.

However, other courts, relying on Justice Stewart's earlier opinion in *United States v. Guest,* 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1965), have limited Griffin to its particular factual situation. *Dombrowski v. Dowling,* 459 F.2d 190 (7th Cir. 1972). They have held that Section 1985(3) only extends to conspiracies premised on constitutional rights that have not traditionally required state action. Under this theory, 42 U.S.C. § 1985(3) would not reach conspiracies based on Fourteenth Amendment violations which is the situation currently before the Court. For example, the Seventh Circuit in *Dombrowski v. Dowling, supra,* and more recently the Fourth Circuit in *Bellamy v. Mason's Stores Inc.,* 508 F.2d 504 (4th Cir. 1974), have refused to extend Section 1985(3) to reach private conspiracies in violation of Fourteenth Amendment rights. On the other hand, several courts have interpreted *Griffin v. Breckenridge, supra,* to mean that Section 1985(3) now reaches *all* private, class-based, racial and nonracial invidiously discriminatory conspiracies, including conspiracies premised on the Fourteenth Amendment. *Cameron v. Brock,* 473 F.2d 608 (6th Cir. 1973); *Westberry v. Gilman Paper Co.,* 43 U.S.L.W. 2318 (Jan. 22, 1975); *Harrison v. Brooks,* 446 F.2d 404 (1st Cir. 1971).

Since *Griffin,* the Ninth Circuit has not considered the scope of Section 1985(3).[6] Considering the question for the first time in light of *Griffin,* in my view, *Cameron v. Brock, supra,* and *Westberry v. Gilman Paper Co., supra,* which give broad reach to the scope of Section 1985(3) follow the teachings of

the Supreme Court more closely than *Dombrowski v. Dowling, supra,* and *Bellamy v. Mason's Stores Inc., supra,* which unnecessarily narrow the holding of *Griffin.* For example, *Dombrowski* relies heavily on Justice Stewart's earlier opinion in *United States v. Guest, supra,* in narrowing Section 1985(3) to reach only private conspiracies violating First or Thirteenth Amendment rights or the right to travel interstate. *United States v. Guest* dealt with a criminal conspiracy under 18 U.S.C. § 241 to deny black citizens the right to use public facilities. Although Justice Stewart found adequate state involvement in the conspiracy to permit federal jurisdiction in *United States v. Guest* and, therefore, did not need to reach the issue of what threshold level of state involvement in the conspiracy is necessary to invoke the statute, he did state *in dictum* that 18 U.S.C. § 241 required some showing of state action where a violation of the statute was based on an infringement of Fourteenth Amendment rights. While concurring in the result, six of the Justices stated that 18 U.S.C. § 241 could reach exclusively private conspiracies since Congress has broad powers under Section 5 of the Fourteenth Amendment to enact legislation to punish all conspiracies—with or without state action—that interfere with Fourteenth Amendment rights.

Justice Stewart wrote *United States v. Guest* five years before he wrote *Griffin v. Breckenridge, supra.* It is significant that in the discussion of *Griffin* of the scope of Section 1985(3) with respect to private conspiracies, Justice Stewart did not even refer to his earlier opinion in *United States v. Guest.* In considering whether Section 1985(3) is limited to

---

**6.** Prior to the Supreme Court decision in *Griffin,* the Ninth Circuit held in *Hoffman v. Halden,* 268 F.2d 280 (9th Cir. 1959) that Section 1985(3) required some showing of state action. However, since *Griffin* extended the scope of the statute to reach private conspiracies, the Ninth Circuit has not considered the question whether Section 1985(3) now reaches *all* private conspiracies.

It should, however, be noted that in an opinion without supporting judicial authority and on a very different fact pattern than the one currently before this Court, a district court in the Ninth Circuit held that Section 1985(3) did not reach all private conspiracies. *Retail Clerks Union Local 770 v. Retail Clerks Int. Ass'n.,* 359 F.Supp. 1285 (C.D.Cal.1973).

**1018**

the Fourteenth Amendment requirement of state action he states:

"A century of Fourteenth Amendment adjudication has, in other words, made it understandably difficult to conceive of what might constitute a deprivation of the equal protection of the laws by private persons. Yet there is nothing inherent in the phrase that requires the action working the deprivation to come from the State. See *e. g. United States v. Harris*, 106 U.S. 629, 643, 1 S.Ct. 601, 612, 27 L.Ed. 290. Indeed, the failure to mention any such requisite can be viewed as an important indication of congressional intent to speak in § 1985(3) of *all* deprivations of 'equal protection of the laws' and 'equal privileges and immunities under the laws,' whatever their source. *Griffin v. Breckenridge*, supra, 403 U.S. at 97, 91 S.Ct. at 1796.

Considering the text of the statute, the companion provisions and the legislative history of the statute, Justice Stewart concludes that all the indicators point unwaveringly to the position that Section 1985(3) was meant to reach *all* deprivation of equal protection of the law. Rather than limiting the private conspiracies that could be reached under Section 1985(3) on the basis of the particular constitutional right that was violated, the Court limited the scope of the statute by requiring a showing that the conspiracy was class-based invidious discrimination. Accordingly, I hold that plaintiff's claim that she was discriminated against on the basis of sex is properly brought under 42 U.S.C. § 1985(3) even though the claim rests on a Fourteenth Amendment equal protection claim.

### 2. 42 U.S.C. § 1985(3) Reaches Sex-Based Conspiracies

■ The Court must next determine whether the type of sex-based conspiracy alleged by plaintiff comes within the protection of the statute. In *Griffin,* Justice Stewart specifically declined to reach the issue of what class-based conspiracies, other than racial conspiracies, could be reached under Section 1985(3) *(Griffin v. Breckenridge, supra,* 403 U. S. at 102 n. 9, 91 S.Ct. 1790). However, the question of whether Section 1985(3) reaches sex-based conspiracies is not new. In fact, the precise issue was raised in *Stern v. Massachusetts Indemnity and Life Insurance Co., supra,* and *Pendrell v. Chatham College,* 370 F. Supp. 494 (W.D.Pa.1974). Both of these courts permitted the use of Section 1985(3) with respect to conspiracies based on sexual discrimination.

Although sex has not yet been considered a "suspect category" under federal law (cf. *Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); compare *Sail'er Inn, Inc. v. Kirby,* 5 Cal.3d 1, 95 Cal.Rptr. 329, 485 P.2d 529 (1971)), I hold that a private conspiracy motivated by invidiously discriminatory intent based upon a sex bias is sufficiently class-based to come within Section 1985(3). cf. *Griffin v. Breckenridge, supra.*

### 3. 42 U.S.C. § 1985(3) Does Not Require An Independent Showing of Animus

■ Furthermore, *Griffin v. Breckenridge, supra,* does not require an independent showing of animus or ill will towards the class discriminated against as claimed by some of the defendants. As stated in *Griffin* 403 U.S. at 102, 91 S. Ct. at 1798, the requirement of discriminatory animus must in other words aim "at a deprivation of the equal enjoyment[s] of rights secured by the law to all". The discrimination must be aimed at a class, not at an individual, but it need not be based on specific intent or ill will. *Byrd v. Local Union No. 24 Int. Bro. of Electrical Wkrs.,* 375 F.Supp. 545 (D.Md.1974); *Azar v. Conley,* 456 F.2d 1382 (6th Cir. 1972).

#### 4. Plaintiff's Pleadings Are Technically Sufficient

Defendants contend that even assuming Section 1985(3) can reach the type of sex-based discriminatory action plaintiff has alleged, the pleadings are technically deficient since the complaint does not allege any specific facts that show the existence of a conspiracy. In a civil rights conspiracy action, the damages flow from the overt acts in furtherance of the conspiracy, not from the existence of the conspiracy itself. *Hoffman v. Halden,* 268 F.2d 280 (9th Cir. 1959). A proper complaint must set forth particular acts that are alleged to have caused the damages. *Powell v. Workmen's Compensation Bd. of State of New York,* 327 F.2d 131 (2d Cir. 1964). While an allegation of overt acts is required, plaintiff need not allege specific dates and meeting places. *Hoffman v. Halden, supra,* at 294. In the instant case, plaintiff has alleged the specific overt acts that defendant companies, acting in a conspiracy, have refused to make available to women disability policies with the same terms, conditions and premium rates that are available to men of the same age, health, income and occupation, that defendant companies have fixed discriminatory premium rates, that defendant companies have acted in concert to secure approval of these discriminatory policies by the Commissioner, and that defendant companies have collected excessive premium rates from plaintiff and the class she represents. These allegations, in my view, state sufficient overt acts to satisfy the pleading requirements of Section 1985(3).

Treating the motion as one for summary judgment, the Court is, of course, aware that in her deposition plaintiff stated that at present she did not have facts to support her allegations of conspiracy other than the fact that all of the named companies offer disability insurance to women on less favorable terms than they offer to men. Although a conspiracy may be shown by circumstantial evidence, to establish violation of Section 1985(3), plaintiff will have to do more than show independent parallel behavior on the part of the defendants. However, due to repeated requests by the defendants to postpone the hearing on the motions presently before the Court, plaintiff has not yet conducted any discovery. It is thus premature at this time to rule on a motion for summary judgment on the conspiracy claim. Accordingly, I deny the motion for summary judgment as to the 42 U.S.C. § 1985(3) claim raised in the third cause of action.

### IV.

#### Fourth Cause of Action—Intentional Infliction of Emotional Distress

Plaintiff brings this pendent state claim for intentional infliction of emotional distress solely against LINA, the insurance company from which she actually purchased her policy. Under California law, to make out a *prima facie* case of intentional infliction of emotional distress, plaintiff must establish (1) outrageous conduct by the defendants, (2) that defendants intentionally caused or recklessly disregarded the probability of causing emotional distress to the plaintiff, (3) that plaintiff suffered emotional distress, and (4) that defendants' acts were the proximate cause of the emotional distress. *Fletcher v. Western National Life Insurance Co.,* 10 Cal.App.3d 376, 89 Cal. Rptr. 78 (1970). The Court must determine whether reasonable minds could differ as to whether or not defendant LINA's conduct was outrageous. *Golden v. Dungan,* 20 Cal.App.3d 295, 97 Cal.Rptr. 577 (1971). Even considering

the changing social mores and the evolving roles of women in our society, it is clear to me that reasonable minds could not find that defendant LINA's conduct of selling plaintiff a disability insurance policy that offered her less beneficial terms than the company offered to men was so outrageous that it would justify a claim of intentional infliction of emotional distress.

Even assuming *arguendo* that defendant LINA's conduct was outrageous, plaintiff is precluded from bringing the fourth cause of action since she consented to the tortious conduct when she chose to purchase the LINA policy. At the time plaintiff purchased her disability insurance policy, she was fully aware of the terms of the LINA policy. She was also advised that another insurance company, not named as a defendant in this action, did offer disability insurance to women on conditions on a par with men. Due to the expense of the more equal insurance policy, plaintiff opted for the less expensive and less equal LINA insurance policy. Plaintiff, having chosen the very terms she now complains of, cannot bring this action in tort. *Restatement 2d of the Law of Tort, Tentative Draft No. 18*, §§ 892–892D. Accordingly, the motion to dismiss the fourth cause of action is granted.

It is hereby ordered that the motions to dismiss the first and second causes of action and the motion for summary judgment on the Section 1985(3) conspiracy claim raised by the third cause of action are denied. The motions to dismiss the fourth cause of action and the Section 1983 claim raised in the third cause of action are granted.

It is further ordered that plaintiff file an amended complaint on or before May 29, 1975, reflecting the dismissal of the Section 1983 claim in the third cause of action and the dismissal of the fourth cause of action.