539 F.2d 1326
 12 Fair Empl.Prac.Cas. 1751,
12 Empl. Prac. Dec. P 11,051
Cecilia DOSKI, on her own behalf and on behalf of all other
persons similarly situated, Appellant,
v.
M. GOLDSEKER CO. et al., Appellees.
Equal Employment Opportunity Commission, Amicus Curiae.
 No. 75-2016.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 6, 1976.
Decided June 30, 1976.
 
 Joseph A. Schwartz, III, Baltimore, Md. (Thomas Waxter, Jr., Washington, D. C., on brief), for appellant.
 Marian Halley, Atty., EEOC, Washington D. C. (Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, EEOC, Beatrice Rosenberg and Charles L. Reischel, Attys., EEOC, Washington, D. C., on brief), as amicus curiae.
 Stanley Mazaroff, Baltimore, Md. (George Cochran Doub, Jr., Venable, Baetjer & Howard, Baltimore, Md., on brief), for appellees.
 Before BRYAN, Senior Circuit Judge, and CRAVEN and RUSSELL, Circuit Judges.
 CRAVEN, Circuit Judge:
 
 
 1
 Ms. Cecilia Doski brought suit in the district court alleging that she had been discharged from employment with M. Goldseker Company because of her sex, in violation of Title VII of the 1964 Civil Rights Act.[1] In a second count she charged that several male employees of the M. Goldseker Company (Goldseker) had conspired to deprive her and all women employees of their rights to equal employment opportunity in violation of 42 U.S.C. § 1985(3). Upon defendant's motion, Judge Blair entered summary judgment against Doski as to her Title VII claim on the ground that she had failed to file a timely charge of discrimination and granted defendant's motion to dismiss the § 1985(3) claim on the ground that that section does not reach totally private conspiracies to deny equal employment opportunities.
 
 
 2
 We hold that Doski's charge of discrimination was timely and accordingly reverse the district court as to that claim. We affirm his dismissal of appellant's claim under § 1985(3).
 
 I.
 
 3
 On January 8, 1973, Doski's employment with the M. Goldseker Company[2] was terminated after 26 years of service.[3] During her employment she held various administrative, managerial and supervisory positions in the Company's collection and mortgage departments. Doski alleged in her complaint that because she was female she had been treated "in a manner inferior to that accorded to male employees" during the period of her employment and that she had been discharged for reasons related to her sex.
 
 
 4
 On October 16, 1973, 281 days after her discharge, Doski filed a charge of sex discrimination with the Maryland Commission on Human Relations (MCHR). Later on the same day, she filed a similar charge with the Equal Employment Opportunity Commission (EEOC). The EEOC interview was completed the next day and a charge was formally filed on that day. On October 19, 1973, 284 days after Doski's discharge, the EEOC was notified that MCHR had terminated its proceedings. It assumed jurisdiction over the charge. A right-to-sue letter was issued on July 19, 1974, and suit was filed in the district court within the prescribed 90-day period. The complaint in the district court rested exclusively on Title VII.
 
 
 5
 On May 13, 1975, Doski filed an amended complaint which asserted a new claim for relief under 42 U.S.C. § 1985(3), based on allegations of a conspiracy among certain male employees of the Company to deprive plaintiff and all women employees of their rights to equal employment opportunities and equal terms and conditions of employment. Defendants then filed motions to dismiss the amended complaint or, in the alternative, for summary judgment.
 
 
 6
 The district court, as we have said, granted summary judgment as to Doski's Title VII claim and dismissed the § 1985(3) cause of action.
 
 II.
 
 7
 It is settled that before an aggrieved person may file suit in the district court under Title VII he must first have timely filed a charge of discrimination with EEOC. McFadden v. Baltimore S.S. Trade Ass'n, 352 F.Supp. 403 (D.Md.), aff'd, 483 F.2d 452 (4th Cir. 1973). Cf. Johnson v. Seaboard Air Line R.R., 405 F.2d 645 (4th Cir. 1968), cert. denied, 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969); Stebbins v. Nationwide Mutual Insurance Co., 382 F.2d 267 (4th Cir. 1967), cert. denied, 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880 (1969). Goldseker's argument, which the district court accepted, was that Doski's charge was not timely under 42 U.S.C. § 2000e-5(e).
 
 The Statute
 42 U.S.C. § 2000e-5(e) reads as follows:
 
 8
 A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.
 
 
 9
 (Emphasis added.)
 
 
 10
 Put simply the statute established two time limitations. The first requires that charges of discrimination be filed with EEOC within 180 days of the alleged unlawful discrimination. But secondly, if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice," Congress chose to enlarge the time limitations; and the charge must be filed within 300 days. Since the charge here was filed with EEOC within 300 days, the issue is simply whether proceedings were "initially instituted" with MCHR so as to invoke the second time limitation period of 300 days. Goldseker argues, and the district court agreed, that although the statute does not say so, the enlarged period of 300 days is not invoked unless the charges were filed with the state agency within 180 days of discrimination. Doski and the EEOC, as amicus curiae, contend that as long as the charges are timely filed under the state agency's own regulations,[4] the 300-day filing period with EEOC applies.
 
 
 11
 The words of the statute provide no support for Goldseker's argument. On its face the section requires only that proceedings be "initially instituted" with the State or local agency. While it clearly states that unless this procedure is followed charges must be filed within 180 days with the EEOC, it does not on its face require or in any way intimate that charges with the State or local agency must be initially instituted within 180 days. Goldseker argues that in using the word "initially," Congress meant to refer back to the first time limit period of 180 days. The best that can be said for such an argument is that if Congress meant that it failed to give it expression. Certainly we cannot read "initially" to mean a limited time period.
 
 
 12
 We disagree with Goldseker that Love v. Pullman Co., 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) and Vigil v. American Telephone and Telegraph Co., 455 F.2d 1222 (10th Cir. 1972), indicate that the phrase "initially instituted" does not refer to the order of filing the charge. All those cases hold is that a complainant's failure to file first with the state agency is not fatal to subsequent prosecution of a claim. But the meaning of the phrase is well settled: the state or local agency should be given first opportunity to act on the complaint. Ugianski v. Flynn and Emrich Co., 337 F.Supp. 807, 808 n.1 (D.Md.1972). See Ortega v. Construction and General Laborers' Union No. 390, 396 F.Supp. 976, 981-82 (D.Conn.1975); Ashworth v. Eastern Airlines, Inc., 389 F.Supp. 597, 601 (E.D.Va.1975). Cf. Love v. Pullman, supra 404 U.S. at 526, 92 S.Ct. 616.
 
 
 13
 Indeed, the entire statutory pattern evidences a desire by Congress to defer EEOC action to similar efforts at conciliation undertaken by analogous state agencies.[5] Goldseker agrees with that statement but contends that a requirement that charges be filed with the state agency within 180 days is necessary to assure an opportunity for state action before the EEOC assumes jurisdiction. This does not appear to be so, but in any event, it is a plea that should be addressed to the Congress. Here EEOC gave MCHR a chance to act.
 
 
 14
 In view of the liberal construction that has been given filing requirements (Cf. Love, supra 404 U.S. at 526-27, 92 S.Ct. 616) and the further expansion of filing periods by Congress in the 1972 amendments, we are unable to read into the statute a federal time limitation period on state or local agency action.
 
 The Precedents
 
 15
 The district court based its decision to dismiss almost entirely on the authority of the Eighth Circuit's decision in Olson v. Rembrandt Printing Co., supra. There is nothing in that case to support dismissal in this one except dictum: "(A) charge of employment discrimination must be filed within 180 days whether or not the complainant is in a deferral state." Id. 511 F.2d 1228, at 1233.
 
 
 16
 In Olson the alleged discrimination occurred on October 1, 1971. A charge was first filed with EEOC on April 3, 1972, more than 180 days later. EEOC then on April 5 referred the charge to the Missouri Commission on Human Rights, which was the initial filing with the state agency. Missouri's statute of limitations on the filing of such charges is 90 days. Therefore, the charge in that case was not timely filed with the state agency under its own regulations, nor was it filed with any agency within 180 days.[6]
 
 
 17
 When we examine those cases where the issue in this case was actually before the court, we find that the results consistently support Doski. Vigil, supra (which was decided under the pre-1972 law which provided 90- and 270-day limitations, instead of the 180- and 360-day requirements in effect in this case), involved charges first filed with the Colorado Civil Rights Commission on February 2, 1968. That was more than 90 days after the alleged discriminatory acts which transpired on or about August 30, 1968, but was within the six-month time limitation under Colorado law for filing with its agency. See Vigil v. American Telephone and Telegraph Co., 305 F.Supp. 44 (D.Col.1969). On appeal from a denial of defendant's motion to dismiss for lack of subject matter jurisdiction, the Tenth Circuit affirmed. Vigil, supra.
 
 
 18
 In Ugiansky, supra (also under pre-1972 time limitations), Chastang, a co-plaintiff, first filed his charge with EEOC on October 22, 1968. According to his allegation the last act of discrimination occurred as to him on July 25, 1968 (less than 90 days earlier). Defendants argued that the last act of discrimination, if any, occurred on July 16, 1968 (more than 90 days before the charge was filed). The district court denied defendant's motion to dismiss for lack of jurisdiction for failure to pursue administrative remedies. In so holding, the district court found that it was unnecessary to determine when the last act of discrimination occurred because "(b)oth plaintiffs in these two cases filed their initial charges of discrimination against the defendants within 210 days after the alleged unlawful employment practice occurred." Id. at 808 (Footnotes omitted.) We note that the charge there had been timely filed under Maryland law.
 
 
 19
 In Ashworth, supra (decided under the 1972 time limitations), the alleged discrimination occurred on September 16, 1974. An attempt was first made to file charges with the District of Columbia Office of Human Rights on March 28, 1972, more than 180 days after the alleged discrimination but within the District's statute of limitations. Jurisdiction was accepted by OHR on April 28, 1972. Defendant moved for summary judgment on the ground that the 300-day period did not apply to the charges made in this case, and the district court denied the motion.
 
 
 20
 In Ortega, supra the district court held that the 300-day period applied where charges were filed 200 days after the discriminatory acts even though not timely under state limitations where the state agency treated it as if timely filed and considered the charge on the merits.
 
 
 21
 Finally, in Williamson v. Chevron Research Co., 12 FEP Cases 96 (N.D.Cal.1976) the precise argument raised by Goldseker was presented to, and rejected by, the district court. In Williamson the plaintiff filed his charge with EEOC 205 days after his discharge, and EEOC, without acting on it, referred the charge to the California Fair Employment Practice Commission some 30 days later. Under California's one-year statute of limitation, the charge was still timely filed with the state agency.
 
 
 22
 Defendant in Williamson, relying primarily on the Eighth Circuit's decision in Olson, supra, argued that plaintiff did not have the benefit of the 300-day filing period with EEOC since he did not file his charge with the state agency within 180 days. The court flatly rejected the argument. "(N)othing in the statutory language nor in the legislative history supports imposition of a requirement that a charge be filed with the state agency within 180 days when state law allows a longer time." Id. at 96. (Footnote omitted).
 
 
 23
 We conclude that these cases stand as substantial countervailing authority to Olson's dictum, and we prefer to follow them.
 
 The EEOC Interpretation
 
 24
 EEOC directs our attention to one of its regulations, 29 C.F.R. § 1601.12(b) (1)(v)(A),[7] as revealing the agency's interpretation of the portion of the Act in issue. That regulation provides that
 
 
 25
 In cases where the document is submitted to the Commission more than 180 days from the date of the alleged violation but within the period of limitation of the particular 706 Agency, the case shall be deferred pursuant to the procedures set forth above.
 
 
 26
 We read this regulation to clearly contemplate that where the state limitations period is greater than 180 days, the period for filing with EEOC is extended. We note that the "administrative interpretation of the Act by the enforcing agency is entitled to great deference." Griggs v. Duke Power Co., 401 U.S. 424, 434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158 (1971). See also Train v. Natural Resources Defense Council, 421 U.S. 60, 86-87, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975).
 
 The Legislative History
 
 27
 Goldseker places great weight on what it argues is legislative history supportive of its position. We believe what the Supreme Court stated in United States v. Oregon, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961), is fully applicable here:
 
 
 28
 Having concluded that the provisions of (the statute) are clear and unequivocal on their face, we find no need to resort to the legislative history of the Act. Since the State has placed such heavy reliance upon that history, however, we do deem it appropriate to point out that this history is at best inconclusive.
 
 
 29
 (Footnotes omitted.) Similarly, we have stated that " '(w)e do not think it permissible to construe a statute on the basis of a mere surmise as to what the Legislature intended and to assume that it was only by inadvertence that it failed to state something other than what it plainly stated.' " United States v. Deluxe Cleaners and Laundry, Inc., 511 F.2d 926, 929 (4th Cir. 1975). Even so, we have carefully studied the legislative history. Goldseker emphasizes the following explanation of procedures by Representative Dent, one of the proponents of the 1972 amendments in the House of Representatives. The relevant portions of his statement read as follows:
 
 
 30
 Procedure Where No State Equal Employment Opportunity Law Exists
 
 
 31
 (1) A charge must be filed within 180 days after the occurrence of an alleged unlawful employment practice.
 
 
 32
 Procedure Where State Equal Employment Opportunity Law Exists
 
 
 33
 (1) A charge must be filed within 180 days after the occurrence of an alleged unlawful employment practice.
 
 
 34
 If a charge is initially filed with a state or local agency, such charge must be filed with the Commission within 300 days after the alleged unlawful practice has occurred or within 30 days after receipt of notice that the state or local agency has terminated its proceedings.
 
 
 35
 118 Cong.Record House 7569 (March 8, 1972).
 
 
 36
 There is no indication that Representative Dent was aware that states had statutes of limitations longer than 180 days. His statements are weakened by the passages in the section-by-section analysis of this subsection which read as follows:
 
 
 37
 This subsection as amended provides that charges be filed within 180 days of the alleged unlawful employment practice. Court decisions under the present law have shown an inclination to interpret this time limitation so as to give the aggrieved person the maximum benefit of the law; it is not intended that such court decisions should be in any way circumscribed by the extension of the time limitations in this subsection. . . .
 
 
 38
 118 Cong.Record House 7565 (March 8, 1972). (Emphasis added). When the above statement of liberal intent is read together with citation to Vigil in the analysis of the preceding subsections,[8] we are left with no clear explanation of legislative purpose.[9] We conclude that the legislative history is not definitive enough to overcome the unambiguously clear wording of the statute.
 
 
 39
 For the above-stated reasons we hold that Doski's charges were " initially instituted" within MCHR within the meaning of 42 U.S.C. § 2000e-5(e) and accordingly since those charges were filed within 300 days with the EEOC, she has satisfied this aspect of the statute. Therefore, we reverse the district court's entry of summary judgment.
 
 III.
 
 40
 In her amended complaint Doski stated a claim under 42 U.S.C. § 1985(3). She alleged that "Defendant Sheldon Goldseker and other male employees of the Company, including specifically Messrs. Eisenberg and Grossman, conspired to deny the representative Plaintiff and all women employees of their rights under both federal and state law to equal employment opportunities and equal terms and conditions of employment. . . ." Doski argues on appeal that these rights "find their source, inter alia, both in federal statutory law (Title VII) and directly in the language of the Fourteenth Amendment. . . ." Brief for Appellant at 27.
 
 
 41
 The scope of § 1985(3) was defined in Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) as follows:
 
 
 42
 To come within the legislation a complaint must allege that the defendants did (1) 'conspire . . .' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of (the) conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'
 
 
 43
 (Emphasis added).
 
 
 44
 Assuming without deciding that all the above requirements are satisfied and that a sex-based conspiracy qualifies as an "otherwise class-based invidiously discriminatory animus" so as to meet the intent requirement of the statute,[10] the issue becomes the same that we faced in Bellamy v. Mason's Stores, Inc. (Richmond), 508 F.2d 504 (4th Cir. 1974) what is the nature of the legal right denied?[11] The statute, as explicated by the Supreme Court above, requires that the purpose of the conspiracy be to deprive plaintiffs of "the equal protection of the laws, or of equal privileges and immunities under the laws." We read this language to cover rights guaranteed by federal law[12] or the Constitution. But "(t)here is . . . a requirement that the conspiracy deprive the plaintiff of a federally protected right." Cohen v. Illinois Institute of Technology, 524 F.2d 818, 828 (7th Cir. 1975).
 
 
 45
 Doski suggests that her right to equal employment opportunities in private employment flows directly from the Fourteenth Amendment. We cannot agree. Whatever Congress' power to cover private discrimination through legislation under Section 5's powers to effectuate the guarantees of that amendment, it is clear that standing alone, the Fourteenth Amendment does not touch private discrimination. Bellamy, supra at 507. Accordingly, we hold that totally private employment discrimination on the basis of sex does not state a cause of action under 42 U.S.C. § 1985(3) for violation of rights flowing directly and exclusively from the Fourteenth Amendment.[13] Bellamy, supra; Cohen, supra at 828-829; Lopez v. Arrowhead Ranches,523 F.2d 924, 927 n.3 (9th Cir. 1975). But see Weise v. Syracuse University, 522 F.2d 397, 408 & n.16 (2d Cir. 1975); Action v. Gannon,450 F.2d 1227 (8th Cir. 1971) (en banc); Richardson v. Miller, 446 F.2d 1247, 1249 (3d Cir. 1971); Reichardt v. Payne, 396 F.Supp. 1010, 1016-18 (N.D.Cal.1975); Pendrell v. Chatham College, 370 F.Supp. 494, 500-01 (W.D.Pa.1974). But see generally Civil Rights State Action is a Requirement for the Application of Section 1985(3) to First Amendment Rights, 54 N.C.L.Rev. 677 (1976).
 
 
 46
 We next look to statutory guarantees of equal employment rights. Doski has suggested only one Title VII. Since Title VII clearly creates a federal statutory right not to be discriminated against in private employment because of sex, the only question in employing it as a basis for the right under § 1985(3) is whether Title VII rights may be enforced through procedures other than those established as part of that statute.
 
 
 47
 In Alexander v. Gardner-Denver Co., 415 U.S. 36, 48-49, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) and Johnson v. Railway Express Agency, 421 U.S. 454, 459, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Supreme Court made it clear that Title VII was not intended to preempt other remedies. "(T)he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." Alexander, supra, 415 U.S. at 48, 94 S.Ct. at 1019. But we find this statement directed only at preexisting or independent rights. "The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." Id. at 48-49, 94 S.Ct. at 1020. (Emphasis added). "The report of the Senate Committee responsible for the 1972 Act explained that neither the 'provisions regarding the individual's right to sue under Title VII, nor any of the other provisions of this bill, are meant to affect existing rights granted under other laws.' " Id. at 48 n.9, 94 S.Ct. at 1020. (Emphasis added.) See also Sape & Hart, Title VII Reconsidered: The Equal Opportunity Act of 1972, 40 Geo.Wash.L.Rev. 824, 849 (1972).
 
 
 48
 In the case at hand, as we have analyzed the scope of § 1985(3), there existed no federal right prior to the enactment of Title VII. Therefore, both any remedy under Title VII and under § 1985(3) were created simultaneously by the enactment of Title VII. Under these circumstances, we find none of the above expressions of congressional intent relevant, and indeed, believe that it intended the procedures under the statute to be the exclusive mechanism for effectuating rights created by the statute. We believe that the consistently applied requirement that complainant cannot entirely bypass the administrative process mandate this result absent expression of congressional intent to the contrary. See, e. g., Johnson v. Seaboard Air Line R.R., supra. And finding no such indication as to the intent of Congress, we hold that § 1985(3) is not an available mechanism to enforce rights created by Title VII.[14]
 
 
 49
 REVERSED IN PART; AFFIRMED IN PART; REMANDED.
 
 
 
 [1]
 42 U.S.C. § 2000e et seq
 
 
 [2]
 The M. Goldseker Company is a real estate and real property management firm in Baltimore, Maryland. Prior to the death of Morris Goldseker in June 1973, it was operated as a sole proprietorship. Since Goldseker's death, the Company has been owned by his estate
 
 
 [3]
 Doski argues that because of extended payments of a severance allowance her employment was not effectively terminated until substantially after January 8, and as a result, the filing timely under any legal interpretation. She thus insists there was a "genuine issue as to . . . material fact(s)," Fed.R.Civ.P. 56(c), and accordingly the granting of summary judgment was erroneous. Brief for Appellant at 20-21
 We disagree. We think it is clear from the undisputed facts that Doski's employment was terminated on January 8, 1973 and that subsequent payment of a severance allowance did not extend her employment.
 
 
 [4]
 At the time Doski was discharged, Maryland had no time limit for filing charges with MHRC. 5A Ann.Code of Md., art. 49B, § 12(a) (1972). On May 24, 1973, a law was passed, effective July 1, 1973, which provided that a charge must be filed within six months of the alleged violation. Ch. 717, L.1973. Since Doski filed her charge within six months of both the new law's enactment date and the date it became effective, we hold that it was timely filed under Maryland law. Goldseker does not argue otherwise
 The change in the law means that the issue presently before us should not be of significant continuing concern to this court since we understand that no state in the circuit has a filing period longer than six months. But see Ashworth v. Eastern Airlines, Inc., 389 F.Supp. 597 (E.D.Va.1975) (Charge was filed with District of Columbia agency and suit was brought in the district court of Virginia.) However, it remains an issue important to EEOC since California, New York and the District of Columbia do have longer limitation periods.
 
 
 [5]
 See 42 U.S.C. § 2000e-5(c). "(T)he purpose . . . of § 706(b) (now § 2000e-5(c)) (is) to give state agencies a prior opportunity to consider discrimination complaints. . . ." Love, supra, 404 U.S. at 526, 92 S.Ct. at 618
 
 
 [6]
 The fact that the state agency in the Olson case did not deal with the complaint on the merits distinguishes Olson from Ortega, supra in which the district court held that where the state agency "considered (plaintiff's) complaint on the merits and acted as it would have with respect to a timely filed charge . . .," the charge (filed 200 days after the last discriminatory act) was timely under § 2000e-5(e). 396 F.Supp. at 982
 
 
 [7]
 40 Fed.Reg. 3210 N (Jan. 20, 1975)
 
 
 [8]
 118 Cong.Record House 7564 (March 8, 1972)
 
 
 [9]
 The unequivocal statements of a legislator " . . . have never been regarded as sufficiently compelling to justify deviation from the plain language of a statute." United States v. Oregon, supra, 366 U.S. at 648, 81 S.Ct. at 1281
 
 
 [10]
 See Reichardt v. Payne, 396 F.Supp. 1010 (N.D.Cal.1975). Compare Hughes v. Ranger Fuel Corp., 467 F.2d 6 (4th Cir. 1972)
 
 
 [11]
 We believe the issues of whether a sex-based conspiracy meets Griffin's requirement of "class-based discriminatory animus" and the nature of the "right" being denied are two separate and distinct issues and that satisfaction of the first does not automatically create a federally protected right. Cohen v. Illinois Institute of Technology, 524 F.2d 818, 829 n.30 (7th Cir. 1975). But see Reichardt, supra
 
 
 [12]
 Cf. Means v. Wilson, 522 F.2d 833, 839 (8th Cir. 1975)
 
 
 [13]
 Our analysis is the same as that in Cohen, supra wherein the court stated: We "assumed for the purpose of decision, the Congress has ample power to enact a statute having the coverage urged . . . but concluded that § 1985(3) is not such a statute." Id. at 830
 
 
 [14]
 Contra Milner v. National School of Health Technology, 11 CCH Empl.Prac.Dec. P 10,787, at pp. 7311-12 (E.D.Pa. March 11, 1976). See issues raised in Weise, supra, 522 F.2d at 408 n.16