**Joe E. DAVIS, Plaintiff-Appellant,**

v.

**VALLEY DISTRIBUTING COMPANY, Defendant-Appellee.**

No. 73–2725.

United States Court of Appeals, Ninth Circuit.

July 30, 1975.

Rehearing Denied Sept. 15, 1975.

George Logan, III, Phoenix, Ariz., for plaintiff-appellant.

Charles E. Jones (argued), Phoenix, Ariz., for defendant-appellee.

Mary Helen Maunter (argued), E.E. O.C., Washington, D. C., for intervenor-appellant.

## OPINION

Before BROWNING and DUNIWAY, Circuit Judges, and MARKEY,* Judge of the United States Court of Customs and Patent Appeals.

* Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

BROWNING, Circuit Judge:

Appellant Davis brought suit under Title VII of the Civil Rights Act of 1964,[1] charging that appellee had discharged him because of his religion. The district court entered summary judgment against appellant, apparently on the ground that the complaints he had filed with the Arizona Civil Rights Commission and the Equal Employment Opportunity Commission had been filed too late.

Appellant was discharged October 31, 1971. He filed his complaint with the Arizona Civil Rights Commission 114 days later, on February 22, 1972. The Arizona Commission dismissed the complaint as barred by Arizona's 60-day statute of limitations. A.R.S. § 41–1481.[2] Appellant filed his complaint with the Equal Employment Opportunity Commission on March 14, 1972, 135 days after his dismissal. On March 29, EEOC referred appellant's complaint to the Arizona Commission.[3] Two days later, 152 days after appellant's discharge, the Arizona Commission returned the complaint to EEOC without further action. EEOC assumed jurisdiction, served notice of the charge upon appellee, and conducted an investigation. On December 12, 1972, EEOC found probable cause to believe appellant's charge was true, and on February 12, 1973, sent appellant notice of his right to sue.

Appellant filed this suit March 19, 1973. Appellee moved to dismiss on the ground that appellant had not filed with the Arizona Commission within 60 days of the alleged discriminatory conduct, as required by A.R.S. § 41–1481, and had not filed with EEOC within 90 days of that conduct as required by section 706(d) of the Civil Rights Act in cases where there has been no prior resort to state proceedings.[4] The district court treated the motion as one for summary judgment and, citing *Dubois v. Packard Bell Corp.,* 470 F.2d 973 (10th Cir. 1972), granted it.[5]

Clearly the Arizona limitation period was 60 days, and appellant did not meet it. There is a question, however, as to the applicable federal period. When appellant took his complaint to EEOC, the federal time limitations provided by section 706(d) required filing with EEOC within 90 days of the conduct complained of, except where the claimant had first submitted his charge to a state agency. In the latter case the aggrieved person could file with EEOC within 210 days after the discriminatory conduct or 30 days after termination of state proceedings, whichever was sooner. Section 4 of the Equal Employment Opportunity Act of 1972 extended these periods from 90 days to 180, and from 210 days to 300.[6] If this amendment applies to appellant, his filing with EEOC (135 days after his discharge) was safely within

---

1. 42 U.S.C. § 2000e *et seq.* (1970), *as amended* (Supp. III, 1973).

2. The Arizona statute of limitations for employment discrimination claims has since been amended to coincide with amended 42 U.S.C. § 2000e–5(e). It now provides 180 days for initial filing with the state commission. A.R.S. § 41–1481 (1974).

3. In furtherance of the legislative policy expressed in § 706(b) of the 1964 Act, EEOC regulations provide that on receiving a complaint not previously filed with the appropriate state or local agency, EEOC will send a copy of the complaint to that agency, and suspend action on the complaint until the state agency has terminated its own proceedings, or until 60 days have passed, whichever is sooner. 29 C.F.R. § 1601.12(b)(1) (1974).

4. 42 U.S.C. § 2000e–5(d) (1970). Title VII was amended on March 24, 1972, by enactment of the Equal Employment Opportunity Act of 1972, Pub.L.No. 92–261, 86 Stat. 103, *amending* 42 U.S.C. § 2000e (1970). Section 706(b) of the 1964 Act was relettered 706(c); section 706(d) was relettered 706(e). The limitation periods were extended from 90 to 180 days where the initial filing is with EEOC, and from 210 to 300 days where complainant first submits his claim to a state agency. 42 U.S.C. § 2000e–5(e) (Supp. III, 1973).

5. In *Dubois,* the 10th Circuit held that the judicial remedy was barred where the administrative claim was filed after both the state statute of limitations and the § 706(d) 90-day federal limitation had run.

6. *See* note 4 *supra.*

the shorter of the two federal statutory periods.

■■■ The 1972 Act became effective March 24, 1972. The prior 90-day limitation had run on appellant's complaint some 54 days earlier. It is the general rule that subsequent extensions of a statutory limitation period will not revive a claim previously barred. *James v. Continental Insurance Co.,* 424 F.2d 1064, 1065–66 (3d Cir. 1970). But the question is one of legislative intent;[7] and though not free from doubt, we think it the more likely conclusion that Congress intended the extended limitations period to apply to all unlawful practices that occurred 180 days before the enactment of the 1972 Act, including those otherwise barred by the prior 90-day limitations period.

Section 14 of the 1972 Act provides:

The amendments made by this Act to section 706 of the Civil Rights Act of 1964 shall be applicable with respect to charges pending with the Commission on the date of enactment of this Act and all charges filed thereafter.[8]

---

7. Appellee has not suggested that constitutional considerations bar "reviving" a "dead" claim of the kind involved here. Where lapse of time has not invested a party with title to real or personal property, it does not violate due process to "repeal or extend a statute of limitations, even after right of action is barred thereby, restore to the plaintiff his remedy, and divest the defendant of the statutory bar." *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 311–12, 65 S.Ct. 1137, 1141, 89 L.Ed.2d 1628 (1945). It is most improbable that Congress intended the lapse of 90 days to give the employer a vested right or property interest in immunity from liability for discriminatory acts.

The Supreme Court, in *Campbell v. Holt,* 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885), "adopted as a working hypothesis, as a matter of constitutional law, the view that statutes of limitation go to matters of remedy, not to destruction of fundamental rights." *Chase Securities, supra,* 325 U.S. at 314, 65 S.Ct. at 1142. Even though the limitations provision is contained in the same statute that created the substantive liability, it does not necessarily measure the right. *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 556–59, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Burnett v. New York Cent. R.R.,* 380 U.S. 424, 426–27 & n.2, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); *Glus v. Brooklyn E. Dist. Term.,* 359 U.S. 231, 234–35, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); *Midstate Horticultural Co. v. Pennsylvania R.R.,* 320 U.S. 356, 360–67, 64 S.Ct. 128, 88 L.Ed. 96 (1943). The question remains one of legislative intent.

*William Danzer & Co. v. Gulf & Ship Island R.R.,* 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 1126 (1925), is not to the contrary. It had been settled in previous cases that the two-year limitations period provided in the Commerce Act for shippers to file damage claims against carriers "not only barred the remedy, but also destroyed the liability of defendant to plaintiff. On the expiration of the two year period, it was as if liability had never existed." 268 U.S. at 636, 45 S.Ct. at 613 (citations omitted).

This construction of the limitations provision had been thought necessary to implement the strong congressional policy favoring uniformity of rates among all shippers, a policy which might otherwise be undermined either by application of varying state periods of limitation or by the carriers' waiver of the limitations defense in some cases but not others. *Phillips v. Grand Trunk Ry.,* 236 U.S. 662, 667, 35 S.Ct. 444, 59 L.Ed. 774 (1915). *See also Midstate Horticultural Co., supra,* 320 U.S. at 360–67, 64 S.Ct. 128.

A close reading of *Chase Securities* indicates that the Supreme Court did not distinguish *Danzer* on the ground that the limitations provision was contained in the statute that created the substantive liability. Rather, the Court relied on the fact that, for the reasons suggested, Congress had intended the expiration of the limitation period to put an end to the existence of the liability itself, not to the remedy alone. 325 U.S. at 312 n.8, 65 S.Ct. 1137.

There is no reason to believe that Congress departed from the general rule that statutes of limitations go to matters of remedy only when it passed the 1964 Act, and "in creating a liability also put a period to its existence." *Chase Securities, supra,* 325 U.S. at 312 n.8, 65 S.Ct. at 1141. From all that appears, Congress intended by the 90-day limitations period to do no more than prevent EEOC and the courts from dealing with stale claims. *Id.* at 314, 65 S.Ct. 1137.

Finally, there has been no suggestion in this case that the limitations provision tended to induce reliance of a kind that would make its retroactive extension so oppressive as to violate due process. *Id.* at 315–16, 65 S.Ct. 1137.

8. Act of March 24, 1972, Pub.L.No. 92–261, § 14, 86 Stat. 103.

Section 14 of the 1972 Act originated as an amendment to S. 2515, proposed by Senator Javits in response to a request by the Justice Department that EEOC's new power to bring suit against violators be made applicable to the Commission's two-year backlog of pending

Initially, both the House and Senate bills provided that the amendments to section 706 would *not* apply to charges filed prior to the effective date of the amendments. H.R. 1746, 92d Cong., 2d Sess. § 10 (1972); S. 2515, 92d Cong., 2d Sess. § 13 (1972); U.S.Code Cong. & Admin.News 1972, p. 2137. Section 14 was adopted primarily to make the new authority given EEOC to bring suit against alleged violators applicable to pending claims. *EEOC v. Kimberly-Clark Corp.,* 511 F.2d 1352, 1355 (6th Cir. 1975); *Koger v. Ball,* 497 F.2d 702, 708 (4th Cir. 1974). But Congress did not limit section 14 of the 1972 Act to the new remedy, although it would have been simple to do so. The language of section 14 is sweeping. It includes all amendments to section 706. Congress was, of course, aware of the other amendments to section 706 contained in the same bill. The provision extending the limitation periods was called to Congress' attention by committee reports and in floor debate.[9] In both the House and Senate, prior court decisions maximizing coverage within the given time limits were noted with approval, and the remedial purpose

of extending the 90-day period to 180 days was emphasized.[10]

The words of section 14 affirmatively suggest an intention to encompass discriminatory conduct that occurred before the Act was passed. "[C]harges pending with the Commission on the date of enactment of this Act" could only involve conduct occurring prior to that date. It might be contended that a charge filed with EEOC after the pre-amendment 90-day limitation had expired, as in this case, was not "pending" on the effective date of the Act. It is unnecessary to argue the point. Section 14 also makes the amendments applicable to "all charges filed thereafter." Since appellant's claim was not formally "filed" until EEOC assumed jurisdiction after the claim was returned by the Arizona Commission,[11] it fell within the literal words of the statute.

There is no substantial reason for giving less than their full meaning to the words of section 14. Even as extended, the time limits under the statute are exceedingly short, particularly since, as Congress noted, most complainants are laymen representing themselves.[12]

cases. *See* 118 Cong.Rec. 4816 (1972); S.Comm. on Labor & Public Welfare, Legislative History of the Equal Employment Opportunity Act of 1972, 92d Cong., 2d Sess. 1674 (Comm. Print 1972).

**9.** 118 Cong.Rec. 7167 (1972); 118 Cong.Rec. 7565 (1972); S.Rep.No.415, 92d Cong., 1st Sess. 2, 36–37 (1971) (to accompany S. 2515); H.R.Rep.No.238, 92d Cong., 1st Sess. 27 (1971) (to accompany H.R. 1746).

**10.** 118 Cong.Rec. 7166 (1972); 118 Cong.Rec. 4941 (1972).

**11.** EEOC regulations provide that when a copy of the complaint has been submitted by EEOC to the designated state agency,

. . . unless the Commission is notified to the contrary, on the termination of State or local proceedings, or after sixty days have passed, whichever comes first, the Commission will consider the charge to be filed with the Commission and commerce processing the case. Where the State or local agency terminates its proceedings within sixty days without notification to the Commission of such action, the Commission will consider the charge to be filed with it on the date the

person making the charge was notified of the termination.
29 C.F.R. § 1601.12(b)(1) (1974).

**12.** 118 Cong.Rec. 7167 (1972); 118 Cong.Rec. 4941 (1972).

It is made clear in the Act itself that Congress did not intend to permit the states to obstruct a complainant's easy access to Title VII remedies by imposing onerous procedural requirements:
If any requirement for the commencement of [state or local] proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced. for the purposes of [subsequent filing with EEOC] at the time such statement is sent by registered mail to the appropriate State or local authority.
42 U.S.C. § 2000e–5(c) (Supp. III, 1973).
The remarks of Senator Humphrey, 110 Cong.Rec. 12725 (1964), are also pertinent here:
We sought merely to guarantee that these States [which have fair employment laws] will be given every opportunity to. employ

The Equal Employment Opportunity Act is a remedial statute to be liberally construed in favor of victims of discrimination. *EEOC v. Wah Chang Albany Corp.*, 499 F.2d 187, 189 (9th Cir. 1974). Accordingly, "courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity resolved them in favor of the complaining party." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 461 (5th Cir. 1970).

■ We conclude, therefore, that the applicable period for an initial filing with EEOC was 180 days rather than 90 days, and appellant's complaint was timely filed on the date when it was returned to EEOC's by the Arizona Commission and formally "filed." Appellee argues that failure to file within the state limitations period denies appellant the longer federal limitation period available to a complainant who properly invokes the state remedy. Since we have held that appellant has the benefit of the 1972 amendments, and since he filed within the 180-day period applicable where there is no prior resort to state proceedings, it is irrelevant whether the longer federal period was also available to him. That question we do not reach. *Cf. Olson v. Rembrandt printing Co.*, 511 F.2d 1228 (8th Cir. 1975).

The remaining question is whether appellant's federal judicial remedy is barred because he failed to file his complaint with the Arizona Commission within the 60-day state limitation period. We conclude that it is not. If the state in which the unlawful practice occurred affords a remedy, prior resort to that remedy is a precondition to intervention by EEOC and suit in federal court. *EEOC v. Wah Chang Albany Corp.*, supra, 499 F.2d at 189 n.3. If access to EEOC and the federal court were also conditioned upon invocation of the state remedy within a period of limitation shorter than that required for application to EEOC, the state and not the federal period of limitations would control the availability of the federal remedy. The complainant would be required to file his charge of discrimination, not within the period fixed by Congress, but within the period fixed by the state in which the unlawful practice occurred.

"If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive." *Holmberg v. Ambrecht*, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). The shorter of the two federal limitation periods represents the judgment of Congress as to the proper balance between the time reasonably required by the employee to prepare and file a claim of discrimination, and protection of the employer from a stale claim. It is unlikely that Congress intended that its judgment with respect to the maximum period within which a claim of employment discrimination affecting interstate commerce might be made could be displaced by legislatures of the states.

■ "In so saying we are not passing upon the validity of any state limitation period as applied to claims of employment discrimination filed with it, but

their expertise and experience without premature influence by the Federal Government.

.    .    .    .    .

At the same time, we recognized the absolute necessity of providing the Federal Government with authority to act . . . . . The basic rights protected . . . are rights which accrue to citizens of the United States; the Federal Government has the clear obligation to see that these rights are fully protected. In instances where the States are unable or unwilling to provide this protection, the Federal Government must have the authority to act.

Senator Humphrey's comments indicate that Congress' prime concern was protection of a federally created right. Interested states clearly are to be accorded deference; this deference, however, is to take the form of an *opportunity* to act. If the state should decline, for whatever reason, to deal with a complaint filed within the period Congress has specified, we find in the legislative history no suggestion that such refusal should be permitted to deprive a complainant of his federal remedy. *See Pacific Maritime Ass'n v. Quinn*, 465 F.2d 108, 110 (9th Cir. 1972).

merely noting that the state limitation period cannot govern the efficacy of the federal remedy." *Olson v. Rembrandt Printing Co., supra,* 511 F.2d at 1232. Presumably the state has chosen its limitation period on the basis of what it considers proper for protection of the state right. But the state remedy may be significantly different in kind or scope from the federal remedies afforded by Title VII. The sole remedy offered by the state in *Crosslin v. Mountain States Telephone & Telegraph Co.,* 422 F.2d 1028 (9th Cir. 1970), *vacated and remanded,* 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618 (1971), was a small fine imposed on the employer. A limitation period that might be appropriate when the sole redress afforded is a criminal penalty against the employer, may be inappropriate to the extensive scheme of injunctive relief and personal compensation contemplated by Title VII.

The only argument made against this construction of the statute is that it would permit complainants to avoid state intervention by waiting until the state statute of limitations has expired and then filing with EEOC, thus allowing complainants to frustrate the intent of Congress that the state be afforded the first opportunity to resolve problems of employment discrimination within its borders.

It is not suggested why the employee would wish to forego an available state remedy. Prior utilization of the state remedy would not impair the availability of the federal remedy, for the two are supplementary, not mutually exclusive. A complainant would save no time by bypassing the state remedy, since EEOC would in any event defer to the state for 60 days, and is required to defer no longer. Section 706(b) and (c), 42 U.S.C. § 2000e–5(c) and (d). Moreover, if the risk of deliberate bypass of the state agency were real, the state could readily avoid it by providing a limitation period no shorter than the federal period—as, in fact, Arizona has now done. A.R.S. § 41–1481 (1974).

*Dubois v. Packard Bell Corp., supra,* 470 F.2d 973, is not contrary to our holding. Complainant Dubois had not complied with the shorter of the two federal periods of limitation. *Olson v. Rembrandt Printing Co., supra,* 511 F.2d 1228, supports our holding, though the court also decides an issue we do not reach: whether the longer federal limitations period would be available to a complainant whose state filing is untimely.

Our holding is consistent with EEOC decisions and regulations, although EEOC also resolves the issue we have reserved, arriving at a conclusion contrary to that of the Eighth Circuit in *Olson.* *See* Case No. KC 7–5–315, 1973 CCH EEOC Dec. ¶ 6024 (1969); Case No. KC 7–3–187, 1973 CCH EEOC Dec. ¶ 6058 (1969).

Reversed.