**Harry L. MOBLEY, Plaintiff,**

v.

**ACME MARKETS, INC., Defendant.**

**Civ. No. H–78–1658.**

United States District Court,
D. Maryland.

June 1, 1979 and June 26, 1979.

Luther C. West, Baltimore, Md., for plaintiff.

Jeffrey P. Ayres and Lawrence S. Wescott, Baltimore, Md., for defendant.

ALEXANDER HARVEY, II, District Judge:

## MEMORANDUM DECISION

This is an action brought by the plaintiff, Harry L. Mobley, a black male, against his employer, Acme Markets, Inc., alleging discrimination in employment on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Presently before the Court is defendant's motion to dismiss, which raises three issues as follows: (1) the permissible scope of the complaint, (2) the timeliness of administrative charges filed by plaintiff with respect to one allegation of discrimination, and (3) plaintiff's standing to litigate certain claims on behalf of a class plaintiff seeks to represent.

Both parties have filed memoranda in support of and in opposition to the pending motion, and oral argument has been heard in open court. For the reasons discussed hereinafter, this Court is satisfied that defendant's motion should be granted in part and denied in part.

### I

#### Scope of Complaint

On May 15, 1974, plaintiff filed almost identically-worded administrative charges of discrimination with the Equal Employment Opportunity Commission (hereinafter "the EEOC") and with the Maryland Commission on Human Relations (hereinafter "the MCHR"). Those charges will be referred to collectively as "the administrative charge." Defendant contends that the only claims of discrimination asserted in the administrative charge are those that relate to (1) layoff, (2) recall and (3) denial of unemployment benefits. Relying on 42 U.S.C. § 2000e–5, *et seq.*, defendant contends that all other claims alleged in the complaint by plaintiff individually, aside from the three mentioned, must be dismissed.

 I start here with citing Judge Blair's decision in *Hubbard v. Rubbermaid, Inc.*, 436 F.Supp. 1184 (D.Md.1977). In that case, in a very thorough examination of the relevant case law in this and other circuits, Judge Blair held that the scope of a Title VII suit is limited to the claims asserted in the administrative charge of discrimination and such other claims uncovered during a reasonable administrative investigation of that charge, provided that those other claims were actually investigated by the administrative agency. *Accord Nance v. Union Carbide Corp.*, 540 F.2d 718, 727 (4th Cir. 1976), *vacated on other grounds*, 431 U.S. 952, 97 S.Ct. 2671, 53 L.Ed.2d 268 (1977); *King v. Seaboard Coastline Ry. Co.*, 538 F.2d 581, 583 (4th Cir. 1976). It is not enough, under the view adopted by Judge Blair, that the claims in the complaint are "like or related" to the claims asserted in the administrative charge. *Compare Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164 (7th Cir. 1976). Nor is it enough that the claims asserted in the complaint might or could have been uncovered during a reasonable administrative investigation of the charge had an investigation been conducted. *Compare Bernstein v. National Liberty Int'l Corp.*, 407 F.Supp. 709 (E.D. Pa.1976). Thus, the test adopted by Judge Blair, with which the undersigned Judge is in full agreement, requires a careful comparison of the allegations in the complaint with the allegations in the administrative charge or charges and the issues investigated by the administrative agency.

This Court is satisfied that the allegations in the complaint concerning discrimination by the defendant against the plaintiff individually pertain to six areas. They are: (1) hiring, (2) layoff, (3) seniority system, (4) recall, (5) denial of unemployment benefits and (6) retaliation in the form of denial of vacation pay and harassment, including unwarranted criticism, excessive assignment to heavy work and a one-day suspension. Contrary to plaintiff's contention, the allegations in the complaint concerning discrimination by defendant against plaintiff individually are not as extensive as those concerning discrimination against the class plaintiff seeks to represent. The allegations in the complaint of class-wide discrimination relate to ten areas, namely: (1) hiring, (2) promotion, (3) transfer, (4) seniority, (5) layoffs, (6) recall, (7) discharges, (8) suspensions, (9) wages and (10) "terms and conditions of employment."

The administrative charge filed by the plaintiff with the EEOC on May 15, 1974 provides as follows:

I have been employed at the above-named company for four years as a full-time loader. In October 1973, I was laid off for reasons given me as a lack of work, even though there were approximately 40 or more men working overtime every day. When I was called back to work, the company wanted me to work as a part-time employee. I refused to work part-time because of the conflict it would present with the union contract and my benefits. I was finally recalled for full-time work in Marcy (sic) of 1974. However, prior to this call back, my seniority rights were bypassed. I lost benefit of regular and special pay and had my unemployment pay check cut because of the company's retaliatory actions. This warehouse employs a majority of black males who speak up for their rights. Whites are not subjected to this harassment. I feel that this company violates the terms and conditions of employment of black males. Further, I feel that I have been discriminated against because of my race.

The administrative charge filed with the MCHR is substantially the same.

A fair reading of the administrative charge is that it alleges discrimination in five areas, namely: (1) layoff, (2) recall, (3) loss of special and regular pay and unemployment benefits, (4) harassment and (5) the so-called "terms and conditions of employment." The meaning of this last allegation of discrimination will be discussed hereafter. However, the Court would note that the administrative charge expressly mentions denial of special and regular pay and expressly mentions harassment. Thus, defendant's contention, made in its briefs, that the administrative charge is limited to layoff, recall and denial of unemployment compensation must be rejected. Insofar as plaintiff's arguments are concerned, this Court rejects plaintiff's contention that the administrative charge expressly alleges that defendant's seniority system is discriminatory. A fair reading of the statement "my seniority rights were bypassed" is that it refers only to the layoff and recall allegations; that is, plaintiff was selected for layoff and was not selected for recall, both in violation of his seniority rights. Thus, the statement just quoted cannot be construed as a generalized attack on the seniority system itself but rather merely an allegation of particularized discrimination against plaintiff in the narrow areas of layoff and recall procedures.

The scope of the administrative investigation conducted by the MCHR, as disclosed by its written findings, was also limited to five areas, namely: (1) recall or "downgrading," (2) layoff, (3) so-called employment benefits, specifically, vacation pay, (4) segregated work facilities and (5) retaliatory harassment, including denial of unemployment compensation benefits, loss of regular and special pay, assignment to heavy work and the one-day suspension.

It should here be noted that defendant contends that only the administrative charge should be considered as the measure of the permissible scope of this lawsuit, and that the administrative investigation conducted by the MCHR should be disregarded.

This contention is based on the assertion that the EEOC did not formally adopt the findings of the MCHR and that plaintiff terminated any EEOC investigation before conciliation was attempted. *Cf., EEOC v. Chesapeake and Ohio R. R.*, 577 F.2d 229, 231–32 (4th Cir. 1978). *But see Hubbard v. Rubbermaid, Inc.*, 436 F.Supp. at 1190. However, it is not necessary to decide this question because it is apparent that the administrative charge and the administrative investigation conducted by the MCHR do not differ in any significant way. All of the allegations of discrimination investigated by the MCHR were either expressly or implicitly included in the administrative charge with the single exception of the alleged segregated work facilities. But that allegation is not included in the complaint and therefore is not an issue in this case. Thus, it is not material here whether the allegations in the complaint are compared with the allegations in the administrative charge and with the areas investigated by the MCHR, or merely with the allegations in the administrative charge standing alone; the result is the same. When so compared, there are only two elements of apparent divergence. The allegations in the complaint regarding hiring and the seniority system were neither expressly asserted in the administrative charge nor specifically investigated by the MCHR. Thus, the viability of those allegations depends on whether they can be said to come within plaintiff's catchall allegation of discrimination in the administrative charge concerning the so-called "terms and conditions of employment."

After considering the relevant authorities, this Court is satisfied that under the particular facts of this case, the catchall allegation that the company "violates the terms and conditions of employment of black males" does not encompass allegations of discrimination relating to hiring and the seniority system. As noted by Judge Blair in *Hubbard v. Rubbermaid, Inc.*, 436 F.Supp. at 1193 n. 11, terms and conditions of employment is an "amorphous phrase which takes on significance only when placed in the context of a specific charge of discrimination." Such a catchall allegation is not to be used as a springboard from which to launch a generalized attack on a broad range of employment practices not considered at the time the administrative charge was filed or investigated. *See Graniteville Co. (Sibley Div.) v. EEOC*, 438 F.2d 32 (4th Cir. 1971). At the very most, such broad phrases mean no more than that allegations of discrimination which are like or related to those specifically enumerated in the administrative charge may also be litigated. *See Lenora v. Koller Dye and Tool Co.*, 446 F.Supp. 1036 (E.D.Wis.1978).

Here, defendant's general hiring practices and overall seniority system are not like or related to the quite individualized allegations in the administrative charge concerning plaintiff's layoff, recall rights, harassment and loss of specific employment benefits such as vacation pay and unemployment compensation. Accordingly, the claims of individual discrimination in the complaint concerning defendant's hiring practices and its seniority system generally will be dismissed.

## II

### Timeliness

Defendant next contends that plaintiff's claim of a discriminatory layoff, even though included in the administrative charge, is barred by limitations because it was not filed with the EEOC within 180 days of the layoff. Plaintiff opposes this contention on two grounds: first, that the relevant limitations period is 300 days under 42 U.S.C. § 2000e–5(e) because the administrative charge was first filed with the state "deferral" agency; and secondly, that a discriminatory layoff is a continuing violation of Title VII.

### (a)

### Limitations Period

Plaintiff was laid off on October 19, 1973. The administrative charge was filed with the MCHR and the EEOC simultaneously on May 15, 1974, more than 180 days later.

Section 2000e–5(e) provides in pertinent part as follows:

A charge under this section shall be filed [with the EEOC] within 180 days after the alleged unlawful employment practice occurred * * * except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief * * * such charge shall be filed [with the EEOC] * * * within 300 days * * *

■ Art. 49B, *Annot. Code of Maryland*, § 9(a), which became effective July 1, 1973, requires that a complaint filed with the MCHR "must be filed within 6 months of the date of the occurrence alleged to be a violation of this article." Since the administrative charge was not filed within six months of the layoff, the charge of discriminatory layoff was untimely under state law. Thus, the precise issue here is whether the filing of an administrative charge of discrimination with a state deferral agency, which charge is untimely under state law, triggers the extended 300-day limit under § 2000e–5(e) for the filing of charges with the EEOC. A review of the authorities discloses a diversity of opinion on this and related questions.

In *Mills v. National Distillers Products Co.*, 435 F.Supp. 72 (S.D.Oh.1977), plaintiff had simultaneously filed a charge of discrimination with the state deferral agency and the EEOC 260 days after the allegedly discriminatory event. That filing was beyond the six-month state statute of limitations and for that reason, the Court held that the state filing did not trigger the 300-day time limits. This same result was reached in *DeGideo v. Sperry-Univac Co.*, 415 F.Supp. 227 (E.D.Pa.1976), where the state and EEOC charges were filed 227 days after the allegedly discriminatory event and the state limitations period was only 90 days. *Accord Dubois v. Packard Bell Corp.*, 470 F.2d 973 (10th Cir. 1972). *See also Olson v. Rembrandt Printing Co.*, 375 F.Supp. 413 (E.D.Mo.1974). One of the rationales of these cases is that the state deferral agency is not an agency "with authority to grant or seek relief" within the

meaning of § 2000e–5(e) if the charge is untimely under state law. Another rationale is that a contrary result would permit a plaintiff in a state with a short limitations period to completely bypass the state agency by filing state and EEOC charges beyond the state limitations period but within the 300-day federal period.

The Ninth Circuit in *Davis v. Valley Distributing Co.*, 522 F.2d 827 (9th Cir. 1975), *cert. denied*, 429 U.S. 1090, 97 S.Ct. 1099, 51 L.Ed.2d 535 (1977), reached a somewhat different result. There the Court held that the failure to file a state charge within the 60-day state limitations period did not deprive the federal court of jurisdiction. The Court held that the 1972 amendments increasing the normal filing period from 90 to 180 days applied retroactively to make plaintiff's EEOC charge, filed 135 days after the act of discrimination, timely. Thus, the Court did not have to reach the question of whether the untimely state charge triggered the extended 300-day time limit of § 2000e–5(e). *See* 522 F.2d at 832. In *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228 (8th Cir. 1975), the Court likewise held that the state limitation period could not govern the efficacy of a federal remedy. There, plaintiff had filed administrative charges with the EEOC and the state deferral agency more than 180 days but less than 300 days after the act of discrimination. The appropriate state limitations period was 90 days. The district court had held that because the state charge was untimely under state law, the filing did not trigger the 300-day time limit for the filing of charges with the EEOC. The Court of Appeals rejected that reasoning, holding that state limitations periods could not control federal rights. The Court of Appeals held instead that a state charge must be filed within 180 days of the act of discrimination, regardless of the state limitations period, and it if is so filed, the longer 300-day time limit for the filing of charges with the EEOC would apply. *Accord Wiltshire v. Standard Oil Co. of Calif.*, 447 F.Supp. 756 (N.D.Cal.1978). *Cf., Rodriquez v. Southern Pacific Transp. Co.*, 587 F.2d 980 (9th Cir. 1978); *White v. Dallas Independent School*

*Dist.,* 581 F.2d 556, 562 (5th Cir. 1978), *en banc.*

The holding of *Olson,* imposing a 180-day time limit for, the filing of state charges irrespective of the state limitations period, is directly contrary to the holding of the Fourth Circuit in *Doski v. M. Goldseker Co.,* 539 F.2d 1326 (4th Cir. 1976). There, plaintiff had filed a charge of discrimination with the MCHR and the EEOC 281 days after an allegedly discriminatory discharge. At the time, Maryland had no state limitations period, and thus the charge was timely under state law. Relying on *Olson,* the district court had held that the filing of the state charge did not trigger the 300-day time limit for the filing of charges with the EEOC because the state charge was not filed within the 180 days of the discharge. The Fourth Circuit Court of Appeals rejected *Olson* and held that § 2000e–5(e) does not impose an inflexible 180-day limitations period for the filing of charges with a state deferral agency. Rather, the Court appeared to adopt the position of the EEOC, advanced in an *amicus* brief, that "as long as the charges are timely filed under the state's own regulations, the 300-day filing period with EEOC applies." That appears to be the current position of the EEOC as reflected by the pertinent regulations. See 29 C.F.R. § 1601, 13(d)(2)(iii). That the Court in *Doski* meant to go no further than that is supported by Footnote 4, in which the Court recognized Maryland's recently enacted six-month state limitations period and noted that because of that enactment, the *Olson* issue was mooted in Maryland. This implies that state filings beyond the recently enacted six-month limitations period would not trigger the 300-day time limit for the filing of charges with the EEOC.

■ This Court is satisfied that under *Doski,* the rule in this Circuit is that the state charges must be timely filed under state law to trigger the longer, 300-day time limit for filing charges with the EEOC. The only case addressing this precise issue and reaching a contrary result is *Ortega v. Constr. & Gen'l Lab. U. No. 390,* 396 F.Supp. 976 (D.Conn.1975). There, the Court held that a state charge which was untimely under state law did trigger the 300-day time limit where the state agency did not dismiss the charge as untimely, and did consider the charge on the merits. Although *Doski* did rely on *Ortega* to a certain extent, that reliance was limited and pertained only to the issue of whether state charges had to be filed within 180 days, regardless of the state limitations period. The holding of *Ortega* is against the weight of authority and will not be followed by this Court. Accordingly, this Court finds that the filing of charges with the MCHR in this case did not trigger the 300-day time limit.

### (b)
### Continuing Violation

■ Plaintiff next contends that his claim of a discriminatory layoff constitutes a continuing violation of Title VII and thus is not barred by limitations. This Court is satisfied that this contention is without merit.

It is well settled that a typical layoff is not a continuing violation but is a completed act at the time it occurs. *See, e. g., Griffin v. Pacific Maritime Ass'n,* 478 F.2d 1118, 1120 (9th Cir. 1973), *cert. denied,* 414 U.S. 859, 49 S.Ct. 69, 38 L.Ed.2d 109 (1973). As was recently made clear in *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977):

* * * the emphasis should not be placed on mere continuity [of impact from the act of discrimination]; the critical question is whether any present *violation* exists. (Emphasis in original)

431 U.S. at 558, 97 S.Ct. at 1889.

Most often, continuing violations are found where the plaintiff alleges a failure to hire or promote followed by the hiring and promotion of others. *See Moore v. Sunbeam Corp.,* 459 F.2d 811, 828 (7th Cir. 1972); *Law v. United Air Lines, Inc.,* 519 F.2d 170 (10th Cir. 1975). Another typical continuing violation is the payment of a discriminatory wage. *See, e. g., Corbin v. Pan American World Airways, Inc.,* 432 F.Supp. 939 (N.D.Cal.1977). What these violations have in common is that they repeat themselves. The hiring or promotions of others is another failure to hire or promote

the plaintiff. The payment of a discriminatory wage is repeated each time the plaintiff receives a paycheck. *See generally, Patterson v. American Tobacco Co.*, 586 F.2d 300, 18 F.E.P. Cases 378 (4th Cir. 1978).

In contrast, demotions, *see, e. g., Cisson v. Lockheed-Georgia Co.*, 392 F.Supp. 1176 (N.D.Ga.1975); layoffs, *see, e. g., Loo v. Gerarge*, 374 F.Supp. 1338 (D.Haw.1974), and discharges, *see, e. g., Moore v. Sunbeam Corp.*, 459 F.2d 811 (7th Cir. 1972), are discrete acts not subject to repetition and are normally not considered to be continuing violations.

I would not agree with plaintiff's attempt to distinguish *United Air Lines v. Evans, supra*, or with plaintiff's contention that the layoff should be deemed a continuing violation because it was the first of a connected series of discriminatory acts.

So, for these reasons, plaintiff's claim of a discriminatory layoff was not the subject of a timely charge filed with the EEOC and therefore that claim must be dismissed in this case.

### III

### Standing

Finally, defendant has moved in its papers to dismiss for lack of standing all the class allegations of discrimination except those which plaintiff may assert individually. This contention is without merit.

Defendant relies on a line of recent cases, beginning with *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), which have considered and discussed the typicality requirement for class certification under Rule 23, F.R.Civ.P. *See, e. g., Shelton v. Pargo, Inc.*, 582 F.2d 1298 (4th Cir. 1978); *Roman v. ESB, Inc.*, 550 F.2d 1343 (4th Cir. 1976); *Doctor v. Seaboard Coast Line Ry. Co.*, 540 F.2d 699 (4th Cir. 1976). *See also Hill v. Western Electric Co.*, 596 F.2d 99 (4th Cir. 1979). However, those cases and the concerns expressed therein are quite irrelevant at this stage of the case.

Defendant has confused standing with typicality. Standing and the closely related doctrine of mootness are both derived from the Constitution, specifically Article III, which requires a "case or controversy" as the fundamental ingredient of subject matter jurisdiction. *See, e. g., Flast v. Cohen*, 392 U.S. 83, 94–101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). To establish standing, it is necessary that the party seeking relief allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of [the] issues * * *" *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

Typicality, on the other hand, is not a constitutional doctrine but pertains solely to the appropriateness of class certification under Rule 23, F.R.Civ.P. In general, typicality along with the additional requirements under Rule 23 of commonality and adequacy of representation together require a basic congruence between the claims and interests of a named plaintiff with those of the class sought to be represented by that plaintiff. Since the Supreme Court decision in *Rodriguez*, the degree of congruence necessary under Rule 23 has been the subject of extensive debate. *See generally, Shelton v. Pargo, supra*.

Although sharing certain similarities, the doctrines of standing and typicality are not co-extensive, the terms are not interchangeable and the existence of each in a particular case demands separate inquiries. *See, e. g., Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Standing is a broader concept than is typicality, particularly in actions brought under Title VII. The test for standing under Title VII, as noted by Justice White in his dissenting opinion in *Sosna*, is exceedingly broad:

Since any discrimination in employment based upon sexual or racial characteristics aggrieves an employee or an applicant for employment having such characteristics by stigmatization and explicit or implicit application of a badge of inferiority, Congress gave such persons standing by statute to continue an attack upon such discrimination even though they fail

to establish particular injury to themselves in being denied employment unlawfully.

419 U.S. at 413 n. 1, 95 S.Ct. at 564.

This statement of the principles involved was not at issue in *Sosna,* and therefore was not disputed by the majority there. I am satisfied that it correctly states the law on standing in this area.

█ When measured under this very broad standard, it is clear that plaintiff has standing in the constitutional sense to assert all of the claims alleged on behalf of the class. Whether or not class certification is appropriate, however, raises entirely different concerns which need not and cannot be addressed at this time. Such a determination under Rule 23 ordinarily cannot be made until after discovery concerning the class action questions presented by Rule 23 has been undertaken by the parties. These issues may be addressed by defendant by an appropriate motion filed at a later date, if desired, after such discovery has been completed.

Accordingly, for all the reasons stated, defendant's motion to dismiss will be granted with respect to plaintiff's allegations of individual discrimination with respect to hiring, seniority and layoff, and in all other respects will be denied.

## MOTION FOR RECONSIDERATION

Plaintiff has filed a motion seeking reconsideration of this Court's ruling of June 1, 1979, insofar as that ruling relates to plaintiff's claim of discriminatory hiring. In the Order entered on June 1, 1979, defendant's motion to dismiss was granted, *inter alia,* as to plaintiff's individual claim of hiring.

On June 1, 1979, the Court dismissed plaintiff's allegation of discriminatory hiring because such an allegation was neither included in the administrative charge of discrimination filed by plaintiff with the EEOC nor investigated by the EEOC. Plaintiff now contends that because plaintiff alleged discrimination in hiring in the administrative charge of discrimination he filed with the MCHR, the allegation should not have been dismissed.

As stated in the Court's opinion of June 1, 1979, the charges plaintiff filed with the EEOC and the MCHR were "substantially the same." Plaintiff now relies on the only difference between the two charges in support of his request for reconsideration. In pertinent part, the MCHR charge provides:

This warehouse employs a majority of Black males in the lowest job category of loaders. Also this co. punishes Black males who speak up for their rights. (Emphasis added)

The similar portion of the EEOC charge provides:

This warehouse employs a majority of Black males who speak up for their rights.

Plaintiff now contends that the underscored language in the MCHR charge represents a proper allegation of discrimination in hiring. The Court would note that plaintiff failed to make this argument in any of the memoranda filed in opposition to defendant's motion to dismiss, which was the subject of the Court's ruling on June 1, 1979. The Court would also note that the MCHR charge contains thirteen spaces for a complainant to check off the kinds of discrimination alleged. Hiring was left unchecked, although plaintiff did check downgrading, layoff, employee benefits and harassment. Also, as revealed by its Written Findings, the MCHR did not construe plaintiff's charge to include a claim of discrimination in hiring and did not investigate such an allegation.

█ However, even if the Court construed the words in question as properly alleging discrimination in hiring, it is clear that such a claim is time barred. Plaintiff alleges in the complaint filed in this action that he was hired on August 10, 1970. He filed the charge of discrimination with the MCHR (and the EEOC) on May 15, 1974, more than three and a half years later. That filing was well beyond the 180-day filing period established by 42 U.S.C. § 2000e–5(e). Inasmuch as plaintiff himself was actually hired, no grounds exist for construing plaintiff's allegation of discrimination in hiring as a continuing violation of

Title VII. *See Moore v. Sunbeam Corporation*, 459 F:2d 811, 828 (7th Cir. 1972); *Law v. United Air Lines, Inc.*, 519 F.2d 170 (10th Cir. 1975). *Cf. United Air Lines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

Accordingly, for the reasons stated, this Court will deny plaintiff's motion for reconsideration of the Court's Order of June 1, 1979, insofar as such Order dismissed plaintiff's individual claim of discrimination with respect to hiring.