**James B. FOIT, Jr.**

v.

**SUBURBAN BANCORP.**

**Civ. A. No. N–82–1662.**

United States District Court, D. Maryland.

Oct. 8, 1982.

Randolph C. Knepper, Levin, Gann & Hankin, Baltimore, Md., Rudy J. Huizenga, John P. Hergt, Donnelly & Associates, Detroit, Mich., for plaintiff.

Stanley Mazaroff, Jeffrey P. Ayers, Venable, Baetjer & Howard, Baltimore, Md., for defendant.

### MEMORANDUM

NORTHROP, Senior District Judge.

In this action the plaintiff, James B. Foit, seeks damages against the defendant, the Suburban Trust Company, for its alleged violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* (hereinafter sometimes referred to as the "ADEA"). The Act protects individuals in the private and non-federal sectors (i.e., state and local government) between the ages of 40 and 70 from discrimination on the basis of their age. 29 U.S.C. § 631(a). The ADEA is also applica-

ble to federal employees over the age of 40. 29 U.S.C. § 633(a). The plaintiff in this case was born on January 27, 1933, and was approximately 47 years old when the discrimination alleged took place.

The facts leading to this dispute are straightforward. The plaintiff worked for the Colonial Bank and Trust Company as the manager of its Installment Loan Department until January, 1974, when it merged with the defendant corporation. He remained in that position until he was named manager of defendant's Auto Loan Department. Plaintiff was terminated on August 26, 1980, after approximately eleven (11) years combined service with these banks.

In the belief he was terminated because of his age, plaintiff filed charges with the State of Maryland Commission on Human Relations. Literally transcribed, his averments were as follows:

I believe that I have been discriminated against based on my age, 47, because: (1) My assistant Terry Thomas, aged 36, was not discharged [when the bank was strongly curtailing its automobile dealer business] and is now acting as manager of my department. I had eleven (11) years of experience with the bank, Mr. Thomas has approximately seven (7) years of experience. Even though I had more seniority, than Mr. Thomas I was discharged.
(2) Several younger employees were moved from the Loan Department to the collection department; because of poor economic conditions. I was never offered another position in another department.
(3) I inquired about the possibility of being reassigned to another department, however, I was told nothing was available.
(4) Younger employees who were endangered by losing their jobs were reassigned to other departments.

After the Commission investigated this complaint, their findings were summarized in the following manner:

In sum, Complainant was terminated because of poor work performance. Complainant stated that he was replaced by a younger employee. However, record evidence submitted to Commission staff revealed that Complainant's responsibilities were assigned to Mr. Daniel DiManna an older employee. With respect to job reassignment, employees were transferred to the Loan Department to the Collection Department due to a reduction in new car loans and upon the recommendation of the Complainant. Commission staff could not substantiate Complainant's allegation that but for Complainant's age he would not have been terminated.

The Commission concluded that there was no probable cause to believe the defendant "... engaged in unlawful employment practices in violation of Article 49B of the Annotated Code of Maryland with respect to termination of the Complainant based on age".[1]

The plaintiff then brought the present action. The gravamen of his complaint remains the same, to wit: he was terminated without just cause or an offer to transfer because of his age.

The defendant seeks dismissal of those portions of plaintiff's complaint which allege (1) the defendant has "consistently engaged in a pattern and practice of age discrimination with regard to its managerial and executive employees in promotion, demotion, transfer, termination and retirement;" and (2) that front pay is recoverable under the ADEA. These issues will herein be reviewed *seriatim*. There is no need for a hearing as counsels' submissions to this Court are quite thorough.

## I.

The defendant's opposition to that portion of plaintiff's amended complaint which alleges defendant has consistently engaged in a company wide pattern and practice of age discrimination is rooted in defendant's assertion that claims of this

---

1. Article 49B of the Annotated Code of Maryland, Sections 1-28 as amended, is often referred to as the Fair Employment Practice Act of Maryland.

breadth never were raised at the administrative level. Defendant argues that the issue of widespread age discrimination was therefore not subjected to administrative investigatory and conciliation procedures, and to permit the plaintiff to litigate this issue now would frustrate the purpose of the administrative investigation. The defendant cites as authority the well-established law in this Circuit that only such discrimination as is (1) stated in the charge itself or (2) developed in the course of a reasonable investigation of that charge may form the jurisdictional basis of a civil action under Title VII. *See Chisholm v. U.S. Postal Service,* 665 F.2d 482 (4th Cir. 1981); *Nance v. Union Carbide Corp., Consumer Products Division,* 540 F.2d 718, 727 n. 20 (4th Cir. 1976), *vacated on other grounds,* 431 U.S. 952, 97 S.Ct. 2671, 53 L.Ed.2d 268 (1977); *Equal Employment Opportunity Commission v. General Electric Company,* 532 F.2d 359 (4th Cir. 1976); *Mobley v. Acme Markets, Inc.,* 473 F.Supp. 851 (D.Md. 1979); *Macon v. Bailar,* 451 F.Supp. 140, 141 (E.D.Va.1978). This standard, as defendant properly points out, is applicable to ADEA cases. *See Algea v. Schweiker,* 529 F.Supp. 163, 166 (D.Md.1981) (Miller, J.); *Looney v. Commercial Union Assurance Cos.,* 428 F.Supp. 533, 535 n. 1 (E.D.Mich.1977).

■ At the onset, it is clear that the State of Maryland Commission on Human Relations did not investigate or uncover evidence of a widespread pattern or practice of discrimination based on age by defendant. The narrow question here, therefore, is whether the claim originally filed by plaintiff is substantively different from that presently before the Court. A comparison of the two pleadings makes clear that the complaints are different to a substantial degree. Although age discrimination is still being alleged, the averment about which defendant complains is far more broad in scope than that which was brought below.[2] Indeed, it is an averment more appropriate for a class action suit inasmuch as it sets forth averments relating to all employees as opposed to the plaintiff only.[3]

The fact that the plaintiff does not explicitly seek to represent a class or use catchphrases to that effect is not important, since the substance of this particular averment, if fully litigated, would unalterably change the nature of this case. The trial and discovery would be indistinguishable from a class action.[4] Correspondingly, if it is excised from plaintiff's complaint, plaintiff can still make out his case and will not be prejudiced thereby.[5] The bottom line, however, is that the averment is overbroad. It is simply not enough that the claims therein are "like or related" to those asserted below. *Mobley v. Acme Markets, Inc.,* 473 F.Supp. 851, 853 (D.Md.1979) (Harvey, J.). *See also Algea v. Schweiker,* 529 F.Supp. 163 (D.Md.1981) (Miller, J.) (where a plaintiff's contentions in an ADEA case

2. The text of the challenged averment reads: "That over the years the Defendant has consistently engaged in a pattern and practice of age discrimination with regard to its managerial and executive employees in promotion, demotion, transfer, termination, and retirement."

3. Cf. *Macon v. Bailar,* 451 F.Supp. 140 (E.D.Va. 1978) (where a plaintiff, who sought to represent a class, was denied jurisdiction as his complaint at the administrative level was an individual action).

4. There is no doubt that plaintiff, if successful, will achieve gains for those employees who are similarly situated. Successful Title VII and ADEA actions tend to accomplish that result. The greater difference lies in the trial itself, which would be conducted differently in a class action suit. *See Nance v. Union Carbide Corp.,*

*Consumer Products Division,* 540 F.2d 718 (4th Cir. 1976).

5. In spite of this decision, the plaintiff is nevertheless entitled to discover business records of the defendant which contain or would lead to a proper statistical analysis of defendant's past termination and transfer practices on an age basis. *See McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (where a single plaintiff in a private Title VII case was permitted to introduce evidence of his employer's general policy and practice with respect to minority employment to support his contentions); *Laugesen v. Anaconda,* 510 F.2d 307, 310 (6th Cir. 1975) (where the Sixth Circuit permitted the introduction of certain bar graphs showing the practices of the employer regarding its retention and termination of employees by age).

went beyond the scope of her formal administrative complaint); *Hubbard v. Rubbermaid, Inc.,* 436 F.Supp. 1184, 1187–93 (D.Md.1977) (Blair, J.) (where, after an extensive review of the policy considerations which must be made in ascertaining the permissible "scope" of a complaint, the Court concluded, "the keystone flows from the [administrative] investigation . . . and its letter of determination . . . [t]he Commission's processing of a discrimination charge is not done in a vacuum, rather it is necessarily in contemplation of Title VII's administrative and judicial scheme . . . [therefore, its] letter of determination, represents the agency's judgment on the scope of a reasonable investigation of the original charge").

## II.

■ The defendant also contends that, as a matter of law, the ADEA does not permit recovery for anticipated loss of future earnings, i.e., front pay.[6] The plaintiff disagrees, and argues front pay can be awarded in this case if this Court finds reinstatement is not an appropriate remedy. The plaintiff further asserts that front pay is particularly appropriate herein, as he is 49 years old and the number of employable years ahead of him are limited.

In *Covey v. Robert A. Johnston Co.,* 19 FEP Cases 1188 (D.Md.1977) (Young, J.), this Court flatly ruled that front pay is not available in an ADEA case. In so holding, Judge Young discarded arguments that an exception should be made when the plaintiff also seeks reinstatement.

> The distinction which plaintiff seeks to draw is not persuasive. Awards for the post trial period are equally speculative in either situation. The availability of such awards ought not to turn on the court's decision as to whether or not reinstatement should be ordered. There are many reasons why a court might consider that a

particular case is not suitable for reinstatement. In *Bishop v. Jelleff Associates* [398 F.Supp. 579], *supra,* an executive was denied reinstatement because a serious conflict with management would have resulted. In *Combes v. Griffin Television, Inc.* [421 F.Supp. 841], *supra,* reinstatement was denied to avoid "unconscionable difficulties" for both the worker and employer. 421 F.Supp. at 847, 13 FEP Cases at 1460. When a court finds strong reasons against reinstatement, it should be able to exercise that option without automatically making the employer liable for potentially immense benefits for the future. As the court pointed out in *Penn-Dixie,* the damages are at their most speculative when there is a relatively young plaintiff, who can reasonably be viewed as having many employable years ahead of him. Plaintiff will not be allowed damages based on losses projected beyond the time of trial . . .

*Id.* at 1192. *See also Mader v. Control Data Corp.,* 19 FEP Cases 1192 (D.Md.1978) (Harvey, J.); *Jaffee v. Plough Broadcasting Corp.,* 19 FEP Cases 1194 (D.Md.1979) (Harvey, J.). Moreover, the plaintiff's argument that at age 49 his number of employable years is limited is somewhat hard to swallow.[7] *See Monroe v. Penn-Dixie Cement Corporation,* 335 F.Supp. 231, 235 (N.D.Ga.1972) (where, in discussing this issue in another ADEA case the Court said computation of future damages would be highly speculative "especially in cases where the plaintiff was in his forties and, thus, had many years ahead . . . which could greatly affect his future earnings."). Counsel for defendant adequately distinguished the cases plaintiff cited in this regard, and this Court does not deem it necessary to repeat that analysis, except to say that defendant is correct.

---

6. As a result of defendant's Motion to Dismiss filed in response to plaintiff's first complaint, plaintiff has agreed to withdraw his demand for damages for pain and suffering.

7. The author of this opinion is 71 and going strong. Moreover, considering the current make-up of the Supreme Court, I seriously doubt this Court's rejection of this argument, if appealed, will be overruled.

Accordingly, the plaintiff's demand for front pay will also be dismissed. An Order will be issued this date in confirmation of this Memorandum.